**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ODIS JONES,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO. 1:20-cv-1210** |
| **CITY OF HUTTO;** | § | |
| **MIKE SNYDER, individually and in his** | § | |
| **official capacities; TANNER ROSE,** | § | |
| **individually and in his official capacities;** | § | |
| **and WARREN HUTMACHER,** | § | |
| **individually and in his official capacities,** | § | |
|     **Defendants.** | § | |

**<u>PLAINTIFF'S ORIGINAL COMPLAINT</u>**

      Odis Jones, Plaintiff, files this Original Complaint against Defendants City of Hutto (the "City" or "Hutto"), Mike Snyder ("Snyder") in his individual and official capacities, Tanner Rose ("Rose"), individually and in his official capacities, and Warren Hutmacher ("Hutmacher"), individually and in his official capacities, and would hereby show as follows:

**INTRODUCTION**

      1.    For more than a year, Plaintiff Odis Jones and his family have been the victims of the City of Hutto and its City Council, including City Council Members Mike Snyder and Tanner Rose, who are determined to destroy Mr. Jones' reputation, career, and livelihood. The City of Hutto, Council Member Snyder, and Council Member Rose have taken unjust and racially driven actions to deny Mr. Jones his federally protected civil rights; to defame and disparage Mr. Jones; to tortiously interfere with his efforts to provide for his family; to breach the Employment Agreement and Separation Agreement that the City of Hutto negotiated, drafted, and lawfully entered into with Mr. Jones; and to intentionally inflict emotional distress upon Mr. Jones.

2.      Accordingly, Mr. Jones brings this action against the City of Hutto, Hutto City Council Members Mike Snyder and Tanner Rose, and Hutto City Manager Warren Hutmacher for racial discrimination, in violation of the laws of the United States, including 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fourteenth Amendment.  In addition, Mr. Jones seeks declaratory judgment regarding the validity of written contracts with the City, breach of such written contracts, and relief for violations of the common laws of the State of Texas.  Mr. Jones seeks damages, punitive damages, attorneys' fees, expert fees, taxable costs of court, and pre- and post-judgment interest.

**PARTIES**

3.      Plaintiff Odis Jones is a resident of Fort Bend County, Texas.

4.      Defendant City of Hutto is a home rule municipality in the State of Texas organized pursuant to Chapter 9 of the Texas Local Government Code.  Citation may be served on the City of Hutto's City Manager, Warren Hutmacher, at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

5.      Defendant Mike Snyder is a Hutto City Council Member and a resident of Williamson County, Texas.  Citation may be served on Defendant Snyder at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

6.      Defendant Tanner Rose is a Hutto City Council Member and a resident of Williamson County, Texas.  Citation may be served on Defendant Rose at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

7.      Defendant Warren Hutmacher is the City Manager of the City of Hutto and a resident of Williamson County, Texas.  Citation may be served on Defendant Hutmacher at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

## JURISDICTION AND VENUE

8.    This is a civil action seeking redress for violation of rights guaranteed to Plaintiff pursuant to 42 U.S.C. §1981 (through or under 42 U.S.C. §1983, due to the violation of Plaintiff's Fourteenth Amendment rights) in accordance with these statutes' provisions against discrimination, as well as declaratory judgment regarding the validity of written contracts with the City, breach of such written contracts, and relief for violations of the common laws of the State of Texas.

9.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367. This Court has supplemental jurisdiction over Plaintiff's state law claims because the state law claims are so related to the federal law claims within the Court's original jurisdiction that they form part of the same case or controversy and arise from a common nucleus of operative fact.

10.   This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred substantially in Williamson County, Texas, within this judicial district.

## CONDITIONS PRECEDENT

11.   All conditions precedent have been performed or have occurred.

## FACTS

12.   Odis Jones was the first African-American ever to serve as City Manager for the City of Hutto, Texas. Mr. Jones was hired as the City Manager in 2016. On July 20, 2018, Mr. Jones and the City entered into a revised Employment Agreement (the "Employment Agreement") to memorialize an increase in Mr. Jones' annual salary, as well as to make other revisions to the employment agreements that had previously been entered into between Mr. Jones and the City. A true and correct copy of the Employment Agreement is attached hereto, and incorporated herein

for all purposes, as <u>Exhibit 1</u>.   Pursuant to the Employment Agreement, Mr. Jones was paid an annual salary of $275,000, plus an annual 3% cost of living increase to be applied upon the annual anniversary date of the Agreement.   In addition, Mr. Jones was entitled to twenty (20) workdays of annual paid vacation time, with a maximum of five (5) unused vacation days that could be carried forward to the next year, and up to ten (10) paid leave days per year to be used for sickness or personal business.   Finally, the Employment Agreement provided that in the event the City terminated Mr. Jones without "Cause" (as such term is defined in the Employment Agreement), Mr. Jones "shall receive a severance payment equal to twelve (12) months' base salary and the cost of continuation of group health plan benefits under the City's group health plans."

13.     Mr. Jones had great success during the first years of his tenure as City Manager, including leading efforts to improve the City's water system; restructuring and improving the City's Police Department; and successfully leading economic growth and commercial development for the City.

14.     This all changed, however, following the election to the City Council of two new Members in May 2019:  Mike Snyder and Tanner Rose.

15.     In July 2019, Mr. Jones reported to Tom Hines, then-Mayor Pro-Tem of the City of Hutto, his concern regarding several potential acts of official oppression against him by City Council Member Mike Snyder and City Council Member Tanner Rose.  On July 30, 2019, Mr. Jones reported to the Hutto City Council another potential incident of official oppression, as well as a possible violation of the Hutto City Charter.  Additionally, Mr. Jones indicated that Council Member Snyder was also creating a hostile work environment for Mr. Jones as an employee of the City, and specifically requested to have his employment rights protected.

16.     As a result of Mr. Jones' July 30, 2019 complaint to the Hutto City Council, Mayor Pro-Tem Hines and Council Member Scott Rose requested an investigation to be placed on the next City Council agenda.  The City Council agenda was posted on August 9, 2019, and—in what appeared to be retaliation for Mr. Jones' allegations—Council Member Tanner Rose asked to place an item on the agenda for "Discussion and possible action regarding the City Manager's actions and contract."  The request was seconded by Council Member Snyder.  The "action" suggested by Council Member Rose was to include discussion and possible action to reprimand, suspend, or terminate Mr. Jones as City Manager.

17.     On August 14, 2019, Mr. Jones sent a letter to the Mayor, the City Council and the Williamson County Attorney placing them on notice that he believed these actions by Council Member Snyder and Council Member Rose constituted several violations of the law, including: retaliation as defined under the Texas Whistleblower Act, Government Code Chapter 554 (Protection for Reporting Violations of the Law), Section 39.02 of the Texas Penal Code (Abuse of Official Capacity), and Section 39.03 of the Texas Penal Code (Official Oppression).

18.     Mr. Jones' concerns in his August 14th letter proved to be validated, as his working relationship with the City Council continued to deteriorate following his whistleblower, retaliation and abuse of official capacity/oppression complaints.

19.     In this regard, after Mr. Jones reported these complaints, an employee of the City "coincidentally" submitted a complaint against Mr. Jones on or about November 12, 2019, for allegedly inappropriate behavior that this employee alleged to have occurred nearly six months earlier.

20.     The City's Executive Director of Human Resources, at the direction of the City Attorney, conducted an investigation into these complaints and found that they could not be confirmed, and that the complaining employee had "manipulated the situation."

21.     On November 16, 2019, the City Council met in Executive Session with the City Attorney to receive a report on the Human Resources investigation's determination that the claims could not be substantiated, and to receive legal advice on how to move forward with Mr. Jones's employment as City Manager.  Mr. Jones expressed to the City Council that they had a right to have a different City Manager and suggested that they separate his employment so that the City might hire a City Manager who would be more of what the community and they wanted as he was tired of the political and racist animus directed towards him.

22.     Following this November 16 meeting, and because Mr. Jones could no longer endure the retaliatory and harassing behavior that was continuing to occur following his whistleblower and retaliation reports, Mr. Jones agreed to enter into negotiations with the City for a separation of employment from his position as City Manager.  These negotiations resulted in an agreement that Mr. Jones would be terminated without Cause, and that Mr. Jones and the City would enter into a Separation Agreement, as well as a Consulting Agreement to assist during the transition to a new City Manager.

23.     On November 21, 2019, the Hutto City Attorney presented a Separation Agreement—which the City Attorney had drafted on behalf of the City—to the City Council in Executive Session.  Pursuant to the terms of the Separation Agreement, the City and Mr. Jones agreed that Mr. Jones would separate from employment with the City on December 31, 2019, and that such separation "shall be a termination without cause" pursuant to Mr. Jones' 2018 Employment Agreement.  The Separation Agreement further provides that, pursuant to the

Employment Agreement, Mr. Jones would receive a severance payment of twelve (12) months of his current base salary, payment of accrued and unused sick leave and vacation time, and continuation of group health benefits for twelve (12) months.

24.     The Separation Agreement also contains a Non-Disparagement provision in which the City specifically agreed not to "disparage" or "make any derogatory comments, whether written or oral, against Mr. Jones."  Finally, the Separation Agreement also contains a mutual waiver and release of any and all claims, whether known or unknown, that the City or Mr. Jones had or may have had against the other.  These claims included, without limitation, the Whistleblower Act, discrimination, and retaliation claims of which Mr. Jones had previously notified the City.

25.     In addition to this Separation Agreement, the City Attorney also presented a Consulting Agreement with Mr. Jones in which he would consult with the City from January 1, 2020 through July 31, 2020, on matters involving the Perfect Game development and the Sports, Health and Entertainment District.

26.     Following this Executive Session, Council Member Scott Rose made a motion to enter into the Separation Agreement and Consulting Agreement with Mr. Jones, which was seconded by Mayor Pro-Tem Tom Hines.  The motion to enter into the Separation Agreement and Consulting Agreement then passed with a super majority vote of 5-1.  The Separation Agreement and Consulting Agreement were signed and executed by Mayor Doug Gaul and City Manager Odis Jones the next day, November 22, 2019.  A true and correct copy of the Separation Agreement is attached hereto, and incorporated herein for all purposes at Exhibit 2; and a true and correct copy of the Consulting Agreement is attached hereto, and incorporated herein for all purposes as Exhibit 3.

27.     On November 25, 2019—only three days after Mr. Jones and the City of Hutto executed these legally binding agreements—a press release was issued from "the Hutto City Council Office of Place 3 Mike Snyder and Hutto City Council Office Place 6 Tanner Rose" publishing disparaging and derogatory statements regarding Mr. Jones in blatant violation of the Non-Disparagement provisions of the Separation Agreement.  Specifically, the press release stated that "we are appalled at the action taken by our City Council" in entering into the Agreement and "amazed that there would be an action taken to pay out the City Manager without considering the conduct over the past 6 months as well as the ongoing investigation."  These statements from the press release were also included in a November 26, 2019 article in the Austin American Statesman (as well as other news media), in which City Council Member Mike Snyder was further quoted as stating that "in the past six months, Jones had shown disrespect to residents and council members, including telling the media that Snyder had interfered with the developer of the Star Ranch subdivision."

28.     On December 5, 2019, the City Council—and more specifically City Council Members Snyder and Rose—attempted to take action to amend the Separation Agreement and Consulting Agreement that had just been executed and entered into by and between the City and City Manager Jones less than two weeks earlier.  Also on December 5, 2019, the City Council caused a second investigation to be conducted into the same employee's allegations that had previously been fully investigated and found to be unsubstantiated by the City of Hutto's Human Resources Department and City Attorney's Office before the City and Mr. Jones executed and legally entered into the Separation Agreement and Consulting Agreement.

29.     While this second investigation was being conducted, statements were made by Council Member Snyder and others that they were going to find "some reason" to make sure that Mr. Jones would never receive his severance under the Separation Agreement.

30.     On or about December 19, 2019, the outside employment lawyer who conducted the second investigation provided a report to City Council that she also found the employee's claims against Mr. Jones to be unsubstantiated.  Upon information and belief, this investigator also told the City Council that they should pay Mr. Jones his severance, as it was legally due to him.

31.     Because several of the Council Members were apparently upset about hearing this and hoping for a different result from this second investigation, Counsel Member Snyder and others then came up with a scheme, which was then later put into action, to attempt to extort and/or blackmail Mr. Jones out of receiving the severance payments under the Separation Agreement. Upon information and belief, the scheme's plan was to threaten to embarrass Mr. Jones publicly by threatening to leak information to the press and public regarding the employee's claims, which had been found to be unsubstantiated by two separate investigations, if Mr. Jones would not agree to give up the severance payments under the Separation Agreement. The City Attorney was then directed by Council Member Snyder and the City Council to contact Mr. Jones and carry out this plan.

32.     In addition, following this Executive Session, on December 19, 2019, and despite the exoneration of Mr. Jones by two separate investigations regarding the employee's allegations, the City Council nevertheless voted to place Mr. Jones on administrative leave and terminated the Consulting Agreement.

33.     The next day, December 20, 2019, a representative of the City Attorney's office contacted Mr. Jones and told him that the City Council Members had directed them to tell Mr.

Jones that if he did not agree to walk away from his existing severance payments due under the Separation Agreement, then they were going to release embarrassing information about him to the public and the press. The City Attorney further told Mr. Jones that the City Council would not listen to their advice as they had advised them not to do what they were doing.

34.     Mr. Jones then told the City Attorney that the City Council Members knew that Mr. Jones had not committed any of the alleged actions, as the claims had been proven to be unsubstantiated by multiple investigators.   Mr. Jones also told the City Attorney that these actions by the City Council could constitute a criminal matter of extortion, blackmail, and a racist act designed to destroy Mr. Jones personally, just as certain Council Members had previously admitted that they were trying to do.  The City Attorney agreed, but said that they could not get the Council Members to do something differently.

35.     Later that same day, Mr. Jones was also contacted by another representative of the City Attorney's office, who said that they had been directed by Council Member Snyder and other Council Members that unless Mr. Jones walked away from the severance money under the Separation Agreement that the City Council members were going to embarrass him publicly.

36.     The next day, December 21, 2019, this representative of the City Attorney's office came to Mr. Jones' house.  The City Attorney told Mr. Jones that "this isn't going to be good for you," "you need to negotiate something different than your current Separation Agreement," and if Mr. Jones didn't, "it's going to be really bad."   Mr. Jones then asked "what are they wanting out of me?"  The City Attorney stated that City Council Member Mike Snyder and City Council Member Peter Gordon were not going to stand for the current language in the Separation Agreement that he was terminated without Cause.  Mr. Jones told the City Attorney that did not make any sense, that he was being terminated without Cause pursuant to his Employment

Agreement, that the City had released all claims, and there wasn't anything new in this latest investigation. The City Attorney agreed and said none of the claims could be substantiated in the new investigation. Mr. Jones then said that the City needs to move on, let him go on with his life and stop trying to ruin him and his reputation. The City Attorney agreed, and said that it didn't make any sense, but they were not going to allow Mr. Jones to get paid under the current Separation Agreement. The City Attorney further stated that these City Council members would try and hold Mr. Jones up in court for years, and that the City Council will say whatever they want about him in a lawsuit and he won't be able to do anything about it, and it will damage his reputation.

37.     The City Attorney then said these City Council members wanted to have Mr. Jones be paid "a fee" and have him resign. Mr. Jones responded that is not what has happened—the City Council had already terminated his contract without Cause. The City Attorney agreed, but said that is not what the Council was now telling them they wanted—and if Mr. Jones did not agree to do that, it was going to be bad for him to get a job and move on. Mr. Jones then asked what if he agreed to these demands, just gave them what they wanted and resigned; how would he know they would live up to that agreement? The City Attorney assured Mr. Jones that they had spoken with them, and they had agreed that they would stand down and would not come after him if he did this.

38.     Around this same time, Mr. Jones was also contacted about the City's scheme by a real estate developer who was then involved in negotiations regarding significant City contracts. The developer told Mr. Jones that he was being directly solicited by Council Member Snyder to pay Mr. Jones the severance payments that were owed to him under the Separation Agreement through the developer's own development fees so that the City would not have to do so. The developer also stated that City Council Member Snyder told him that if Mr. Jones would go along with this scheme, then he could make the complaining employee's embarrassing claims "go away."

However, City Council Member Snyder further told the developer that if Mr. Jones refused to agree to engage in this scheme, then the unsubstantiated allegations against Mr. Jones "would be made public" and "would ruin his life and career."

39.     Mr. Jones refused to be involved in any way in the City's proposed scheme, and instead contacted the Hutto Police Department and made a report of extortion and abuse of official capacity/public office.  Mr. Jones also reported the scheme to the City's Public Safety Director and Chief of Police, who stated that they would in turn report it to the FBI.  Upon information and belief, these criminal investigations remain ongoing.

40.     On January 3, 2020, the City paid Mr. Jones the $412,000 severance payment set forth in the Separation Agreement, which amount represented twelve (12) months of Mr. Jones' then-current annual salary and his accrued and unused vacation and sick days, as required Mr. Jones' Employment Agreement with the City for a termination without Cause.

41.     In the months since Mr. Jones separated his employment, the City, Council Member Snyder and Council Member Rose have continued to engage in illegal and discriminatory actions against Mr. Jones, to defame and disparage him in breach of the Separation Agreement, and to tortiously interfere with his business opportunities.  These illegal actions have included, without limitation:

- Council Member Snyder publishing statements that he was going to "destroy" Mr. Jones.

- Council Member Snyder contacting businesspeople and telling them that they should not do business with Mr. Jones and that he was not a good person.

- Council Member Snyder and Council Member Rose publicly stating, posting on social media, and providing the news media with disparaging and defamatory statements regarding Mr. Jones' tenure as City Manager and that he violated the law by entering into "illegal" contracts.

- Disparaging and defamatory emails sent to the Mayor and City Council Members of Missouri City, Texas from an anonymous email address, including statements such as Mr. Jones "destroy(ed)" the City of Hutto during his tenure, he is a "bully", "manipulative", "has cost the city of Hutto millions in lawsuits, legal fees, egregious spending, 60% staff turnover YOY," that "it will take Hutto at least a decade to recover, and "don't be his next victim."

42.     These attacks continued throughout 2020, including City Council Members Snyder and Rose making false and defamatory statements that Mr. Jones had illegally entered into contracts on behalf of the City.   In truth, any contracts that were entered into by Mr. Jones on behalf of the City were done with reliance upon the legal advice, direction and authorization of the City Attorney(s) and City Council, and in accordance with his authority pursuant to Section 4.01(f) of the City Charter.   These attacks and false and defamatory statements caused Mr. Jones to lose out on potential job and business opportunities.

43.     This crusade against Mr. Jones culminated in the City of Hutto voting to pass a resolution on December 3, 2020 purporting to declare as "void" the Separation Agreement, which the City had entered into with Mr. Jones more than a year earlier.   A true and correct copy of which is attached hereto, and incorporated herein for all purposes as Exhibit 4.   In addition, this resolution also purported to retroactively "re-terminate" Mr. Jones' employment with the City, effective December 31, 2019.   Upon information and belief, the City had never taken such an action against any of the previous City Managers (all of whom were White), or any other employee of the City.   Further, the City took this unprecedented action, based on false and stigmatizing purported reasons, without providing Mr. Jones a name-clearing hearing, as has been previously afforded to other non-African-American employees of the City, including a former City Manager, who is White.

44.     The next day, December 4, 2020, the City Manager and the City Attorney for the City of Hutto sent Mr. Jones a letter purportedly "rescinding" the Separation Agreement and "demanding" the return of the $412,000 that had been lawfully owed and paid to Mr. Jones <u>eleven months earlier</u>.  A true and correct copy of which is attached hereto, and incorporated herein for all purposes, as <u>Exhibit 4</u>.

45.     Mr. Jones has been warned by individuals with personal knowledge of the actions and internal discussions by the City, Council Member Snyder, and Council Member Rose set forth in this Complaint that these actions have been driven by blatant racial animus toward Mr. Jones. Mr. Jones has been told that the City and these individual Defendants are "out to get him, and anyone associated with him," that "they won't stop," and that they fear for the safety of Mr. Jones and his family.  Moreover, these overtly racist actions toward Mr. Jones have led several individuals—those who have had the courage and integrity to refuse to engage in such actions— to resign, to be pressured to resign, to threaten to resign, and to be terminated.  It is no coincidence that the City's previous City Attorneys, auditors, and Interim City Manager are no longer working with the City.

46.     Finally, the blatant racial animus of the City and City Council Members Snyder and Rose toward Mr. Jones has even been confirmed in writing.  In a letter signed by four former Hutto City Council Members with personal knowledge of these illegal actions, they stated that during his tenure as City Manager, Mr. Jones has come under attack by adversaries on the City Council, a lot of which has been politically and racially motivated because of Mr. Jones' ethnicity.

## CAUSES OF ACTION

### COUNT 1: Racial Discrimination Under
### 42 U.S.C. § 1981 (through or under 42 U.S.C. § 1983)

47.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

48.     Plaintiff is a member of a protected class (African-American race).

49.     42 U.S.C. §1981 (through or under 42 U.S.C. §1983, due to the violation of Plaintiff's Fourteenth Amendment rights) prohibits race discrimination in the making and enforcing of contracts, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges and conditions of the contractual relationship.

50.     Defendants City of Hutto, Warren Hutmacher, Mike Snyder, and Tanner Rose were acting under the color of law and are liable under 42 U.S.C. §1983.  In addition, Hutmacher, Snyder, and Rose undertook actions outside of the color of law in their individual capacities against Plaintiff and are therefore liable under 42 U.S.C. §1981.

51.     Defendants City of Hutto, Mike Snyder and Tanner Rose (both individually and in their official capacities), intentionally discriminated against Plaintiff Odis Jones because of his race in violation of 42 U.S.C. §1981 (through or under 42 U.S.C. §1983, due to the violation of Plaintiff's Fourteenth Amendment rights) by treating Plaintiff differently than any previous City Manager; by unlawfully attempting to modify the Separation Agreement between Plaintiff and Defendants; by unlawfully attempting to avoid the payment obligations of the Separation Agreement and Employment Agreement between Plaintiff and Defendants; by unlawfully discharging Plaintiff amidst allegations of misconduct, stigmatizing him and foreclosing him from other employment opportunities without offering him the opportunity of a name-clearing hearing,

unlike had been offered to similarly situated former non-African American Hutto employees; by unlawfully attempting to terminate the Separation Agreement; by unlawfully attempting to rescind the Separation Agreement; by unlawfully attempting to avoid Defendants' obligations under the Separation Agreement and Employment Agreement; by unlawfully causing Plaintiff to rely to his detriment on Defendants' promises and obligations under the Separation Agreement and Employment Agreement; by Defendants being unjustly enriched by the Separation Agreement and Employment Agreement; and by Defendants breaching the Separation Agreement and Employment Agreement, including without limitation, the respective termination provisions, payment provisions and non-disparagement provisions.

52.     The unlawful practices committed by Defendants were, and are, a direct cause of Plaintiff's damages, as more fully set forth herein.

## COUNT 2: Breach of Contract

53.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

54.     On or about July 20, 2018, Defendant City of Hutto and Plaintiff Odis Jones entered into a written Employment Agreement with regard to his continued employment as City Manager. This Employment Agreement is a valid, legal and enforceable contract.

55.     On or about November 22, 2019, the City of Hutto and Plaintiff Odis Jones entered into a written Separation Agreement with regard to the termination of his employment as City Manager.  This Separation Agreement is a valid, legal and enforceable contract.

56.      Defendant City of Hutto has breached the Separation Agreement and Employment Agreement with Plaintiff in multiple ways, including without limitation:  unlawfully attempting to modify the Separation Agreement between Plaintiff and Defendants; unlawfully attempting to

avoid the payment obligations of the Separation Agreement and Employment Agreement; unlawfully attempting to terminate the Separation Agreement; by unlawfully attempting to rescind the Separation Agreement; unlawfully attempting to avoid Defendant's obligations under the Separation Agreement and Employment Agreement; unlawfully causing Plaintiff to rely to his detriment on Defendant's promises and obligations under the Separation Agreement and Employment Agreement; by Defendant being unjustly enriched by the Separation Agreement and Employment Agreement; and by Defendant breaching the termination provisions, payment provisions and non-disparagement provisions.

57.     The breaches committed by Defendant City of Hutto were, and are, a direct cause of Plaintiff's damages, as set forth herein.

### COUNT 3: Declaratory Judgment

58.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

59.     Plaintiff requests a declaratory judgment under Federal Rule of Civil Procedure 57; 28 U.S.C. §§2201 and 2202; and Tex. Civ. Prac. & Rem. Code § 37.001 et. seq., that:

    a.  the Employment Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018, is and remains a valid, legal and enforceable contract under federal and Texas law;

    b.  the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, is and remains a valid, legal and enforceable contract under federal and Texas law;

    c.  Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 4.2 of the Employment Agreement

entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018;

d.  Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 2 of the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019; and

e.  Defendant's attempted actions to void, rescind and/or avoid the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, are void, invalid and of no legal effect.

## COUNT 4: Defamation and Defamation *Per Se*

60.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

61.     Defendants City of Hutto, Mike Snyder and Tanner Rose, in their individual and official capacities, have made false, derogatory and disparaging statements to others about Plaintiff Odis Jones which injured Plaintiff's reputation and work performance in the community; exposed Plaintiff to public hatred, contempt, ridicule and financial injury; impeached Plaintiff's honesty, integrity, virtue and reputation; and falsely charged Plaintiff with a crime.

62.     Defendants made these statements knowingly, intentionally, recklessly, negligently or with actual malice, with the effect of injuring Plaintiff's hard-earned and well-deserved good name and reputation.

63.     As a matter of law, the untrue statements by Defendants exposed Plaintiff to ridicule, shame and embarrassment.

64.     Defendants published the statements with actual malice, and Plaintiff is therefore entitled to a presumption of general damages.

65.     Defendants false, derogatory and disparaging statements directly and proximately caused injury to Plaintiff, which were, and are, a direct cause of Plaintiff's damages, as set forth herein.

### COUNT 5: Tortious Interference with Existing Contracts

66.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

67.     By publishing false, defamatory and disparaging statements about Plaintiff, and by stating that members of the community should not do business with Plaintiff, Defendant Mike Snyder and Defendant Tanner Rose willfully and intentionally interfered with Plaintiff's business contracts and employment.

68.     Defendants Mike Snyder's and Tanner Rose's interference directly and proximately caused injury to Plaintiff, which were, and are, a direct cause of Plaintiff's damages, as set forth herein.

### COUNT 6: Tortious Interference with Prospective Business Relations

69.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

70.     By publishing false, defamatory and disparaging statements about Plaintiff, and by stating that members of the community should not do business with Plaintiff, Defendant Mike Snyder and Defendant Tanner Rose willfully and intentionally interfered with Plaintiff's prospective business relations and employment.

71.     Defendants Mike Snyder's and Tanner Rose's interference directly and proximately caused injury to Plaintiff, which were, and are, a direct cause of Plaintiff's damages, as set forth herein.

**COUNT 7: Intentional Infliction of Emotional Distress**

72.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully stated herein.

73.     Defendants Mike Snyder and Tanner Rose acted intentionally in their conduct toward Plaintiff Odis Jones.

74.     Defendants' conduct was extreme and outrageous.

75.     Defendants' conduct caused Plaintiff severe emotional distress.

76.     Defendants' intentional infliction of emotional distress toward Plaintiff directly and proximately caused injury to Plaintiff, which were, and are, a direct cause of Plaintiff's damages, as set forth herein.

**DAMAGES**

77.     As a result of Defendant's unlawful conduct, Plaintiff has suffered economic damages, including past and future lost income, lost earnings, and lost benefits under contract or employment relationship.   Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to, pecuniary loss, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.   Plaintiff additionally brings suit for punitive and exemplary damages.

## ATTORNEYS' FEES AND EXPENSES

78.     A prevailing party may recover reasonable attorneys' and experts' fees under 42 U.S.C. §1981.  In addition, the court may award costs and reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.009 and 38.001.  Plaintiff seeks all reasonable and necessary attorneys' fees in this case from Defendants, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals.  Plaintiff additionally brings suit for expert fees and all costs associated with the prosecution of this action.

## JURY DEMAND

79.     Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a.     The Court assume jurisdiction of this cause;

b.     The Court award Plaintiff damages, including exemplary and punitive damages as specified above;

c.     The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

d.     The Court award Plaintiff presumed and other damages for defamation and defamation *per se*;

e.     The Court declare that the Employment Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018, is and remains a valid, legal and enforceable contract under federal and Texas law;

f.      The Court declare that the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, is and remains a valid, legal and enforceable contract under federal and Texas law;

g.      The Court declare that Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 4.2 of the Employment Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018;

h.      The Court declare that Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 2 of the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019;

i.      The Court declare that Defendant's attempted actions to void, rescind and/or avoid the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, are void, invalid and of no legal effect; and

j.      The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

By: */s/ Edward M. ("Ted") Smith*
Edward M. "Ted" Smith
State Bar No. 00791682
tsmith@cornellsmith.com
Andrew Broadaway
State Bar No. 24082332
abroadaway@cornellsmith.com

**CORNELL SMITH MIERL BRUTOCAO
  BURTON, LLP**
1607 West Avenue
Austin, Texas 78701
Telephone:  (512) 328-1540
Telecopy:   (512) 328-1541

**ATTORNEYS FOR PLAINTIFF ODIS JONES**