**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ODIS JONES,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO. 1:20-cv-1210** |
| **CITY OF HUTTO;** | § | |
| **MIKE SNYDER, individually;** | § | |
| **TANNER ROSE, individually;** | § | |
| **and WARREN HUTMACHER,** | § | |
| **individually,** | § | |
| **Defendants.** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Odis Jones, Plaintiff, files this First Amended Complaint against Defendants City of Hutto (the "City" or "Hutto"), Mike Snyder ("Snyder"), individually, Tanner Rose ("Rose"), individually, and Warren Hutmacher ("Hutmacher"), individually, and would hereby show as follows:

### INTRODUCTION

1.      For more than a year, Plaintiff Odis Jones and his family have been the victims of the City of Hutto and its City Council, including pointed actions by City Council Members Mike Snyder, Tanner Rose, and potentially other City Council Members, who are determined to destroy Mr. Jones' reputation, career, and livelihood.   The City of Hutto, Council Member Snyder, and Council Member Rose have taken unjust and racially motivated actions to deny Mr. Jones his federally protected civil rights; to defame and disparage Mr. Jones; to interfere with his efforts to provide for his family and enjoy a livelihood; to breach the Employment Agreement, Separation Agreement, and Consulting Agreement that the City of Hutto negotiated, drafted, and lawfully entered into with Mr. Jones; and to intentionally inflict emotional distress upon Mr. Jones.

2.      Accordingly, Mr. Jones brings this action against the City of Hutto, Hutto City Council Members Mike Snyder and Tanner Rose, and Hutto City Manager Warren Hutmacher for racial discrimination, in violation of the laws of the United States, including 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  In addition, Mr. Jones seeks declaratory judgment regarding the validity of written contracts with the City, the impropriety of the City's actions in purporting to void the contracts, breach of such written contracts, and relief for violations of the common laws of the State of Texas.

3.      Mr. Jones also asserts claims under 42 U.S.C § 1985(2) against Defendants Snyder, Rose and Hutmacher as a result of their conspiracy to deter, intimidate, and threaten witnesses from testifying or participating in this lawsuit freely, fully, and truthfully.

4.      In addition, Mr. Jones brings alternative claims under the doctrine of equitable estoppel and equitable tolling regarding claims that accrued prior to the end of his employment with the City of Hutto, and which were waived and released pursuant to the Separation Agreement. To the extent the Court finds that the Separation Agreement was properly voided by the City, Mr. Jones' release of those claims is also voided, and he hereby brings those claims in the alternative to his request for declaratory judgment.

5.      Mr. Jones seeks damages, punitive damages, injunctive relief, attorneys' fees, expert fees, taxable costs of court, and pre- and post-judgment interest.

## PARTIES

6.      Plaintiff Odis Jones is a resident of Fort Bend County, Texas.

7.      Defendant City of Hutto is a home rule municipality in the State of Texas organized pursuant to Chapter 9 of the Texas Local Government Code.  Citation may be served on the City

of Hutto's City Manager, Warren Hutmacher, at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

8.      Defendant Mike Snyder is a Hutto City Council Member and a resident of Williamson County, Texas.  Citation may be served on Defendant Snyder at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

9.      Defendant Tanner Rose is a Hutto City Council Member and a resident of Williamson County, Texas.  Citation may be served on Defendant Rose at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

10.     Defendant Warren Hutmacher is the City Manager of the City of Hutto and a resident of Williamson County, Texas.  Citation may be served on Defendant Hutmacher at 401 West Front Street, Hutto, Texas 78634, or wherever he may be found.

## JURISDICTION AND VENUE

11.     This is a civil action seeking redress for violation of rights guaranteed to Plaintiff pursuant to 42 U.S.C. §1981 (through or under 42 U.S.C. §1983) and 42 U.S.C. § 1985 in accordance with these statutes' provisions against racial discrimination and violations of constitutional rights, as well as declaratory judgment regarding the validity of written contracts with the City, breach of such written contracts, and relief for violations of the common laws of the State of Texas.

12.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367.  This Court has supplemental jurisdiction over Plaintiff's state law claims because the state law claims are so related to the federal law claims within the Court's original jurisdiction that they form part of the same case or controversy and arise from a common nucleus of operative fact.

13.     This action lies in the United States District Court for the Western District of Texas, Austin Division, pursuant to 28 U.S.C. § 1391(b), as the events giving rise to Plaintiff's claims occurred substantially in Williamson County, Texas, within this judicial district.  In addition, venue lies in this Court based upon Paragraph 5.6 of the Employment Agreement between Plaintiff and Defendant City of Hutto whereby they contractually consented to exclusive venue in the federal district courts within whose jurisdiction Williamson County, Texas falls.  A true and correct copy of the Employment Agreement is attached hereto, and incorporated herein for all purposes, as Exhibit 1.

## CONDITIONS PRECEDENT

14.     All conditions precedent have been performed or have occurred.

## FACTS

15.     Odis Jones was the first African-American ever to serve as City Manager for the City of Hutto, Texas.  Mr. Jones was hired as the City Manager in 2016.  On July 20, 2018, Mr. Jones and the City entered into a revised Employment Agreement (the "Employment Agreement") to memorialize an increase in Mr. Jones' annual salary, as well as to make other revisions to the employment agreements that had previously been entered into between Mr. Jones and the City.  A true and correct copy of the Employment Agreement is attached hereto, and incorporated herein for all purposes, as Exhibit 1.   Pursuant to the Employment Agreement, Mr. Jones was paid an annual salary of $275,000, plus an annual 3% cost of living increase to be applied upon the annual anniversary date of the Agreement.  In addition, Mr. Jones was entitled to twenty (20) workdays of annual paid vacation time, with a maximum of five (5) unused vacation days that could be carried forward to the next year, and up to ten (10) paid leave days per year to be used for sickness or personal business.  Finally, the Employment Agreement provided that in the event the City

terminated Mr. Jones without "Cause" (as such term is defined in the Employment Agreement), Mr. Jones "shall receive a severance payment equal to twelve (12) months' base salary and the cost of continuation of group health plan benefits under the City's group health plans."

16.     Mr. Jones had great success during the first years of his tenure as City Manager, including leading efforts to improve the City's water system; restructuring and improving the City's Police Department; and successfully leading economic growth and commercial development for the City.

17.     This all changed, however, following the election to the City Council of two new Members in May 2019:  Mike Snyder and Tanner Rose.

18.     In July 2019, Mr. Jones reported to Tom Hines, then-Mayor Pro-Tem of the City of Hutto, his concern regarding several potential acts of official oppression against him by City Council Member Mike Snyder and City Council Member Tanner Rose.  On July 30, 2019, Mr. Jones reported to the Hutto City Council another potential incident of official oppression, as well as a possible violation of the Hutto City Charter.  Additionally, Mr. Jones indicated that Defendant Snyder was also creating a hostile work environment for Mr. Jones as an employee of the City, and specifically requested to have his employment rights protected.

19.     As a result of Mr. Jones' July 30, 2019 complaint to the Hutto City Council, Mayor Pro-Tem Hines and Council Member Scott Rose requested an investigation to be placed on the next City Council agenda.  The City Council agenda was posted on August 9, 2019, and—in what appeared to be retaliation for Mr. Jones' allegations—Council Member Tanner Rose asked to place an item on the agenda for "Discussion and possible action regarding the City Manager's actions and contract."  The request was seconded by Defendant Snyder.  The "action" suggested by

Defendant Rose was to include discussion and possible action to reprimand, suspend, or terminate Mr. Jones as City Manager.

20.     On August 14, 2019, Mr. Jones sent a letter to the Mayor, the City Council and the Williamson County Attorney placing them on notice that he believed these actions by Defendant Snyder and Defendant Rose constituted several violations of the law, including: retaliation against Mr. Jones as defined under the Texas Whistleblower Act, Government Code Chapter 554 (Protection for Reporting Violations of the Law), Section 39.02 of the Texas Penal Code (Abuse of Official Capacity), and Section 39.03 of the Texas Penal Code (Official Oppression).

21.     Mr. Jones' concerns in his August 14th letter proved to be validated, as his working relationship with the City Council continued to deteriorate following his whistleblower, hostile work environment, retaliation, and abuse of official capacity/oppression complaints.

22.     In this regard, after Mr. Jones reported these complaints, an employee of the City "coincidentally" submitted a complaint against Mr. Jones on or about November 12, 2019, for allegedly inappropriate behavior that this employee alleged to have occurred nearly six months earlier.  Upon information and belief, Defendant Snyder, Defendant Rose, or both, had a hand in the timing and substance of this complaint of allegedly inappropriate behavior made against Mr. Jones.

23.     The City's Executive Director of Human Resources, at the direction of the City Attorney, conducted an investigation into these complaints and found that they could not be confirmed, and that the complaining employee had "manipulated the situation."

24.     On November 16, 2019, the City Council met in Executive Session with the City Attorney to receive a report on the Human Resources investigation's determination that the claims could not be substantiated, and to receive legal advice on how to move forward with Mr. Jones's

employment as City Manager.  Mr. Jones expressed to the City Council that they had a right to have a different City Manager and suggested that they separate his employment so that the City might hire a City Manager who would be more of what the community and they wanted as he was tired of the political and racist animus that had been directed towards him during his tenure, and particularly since Defendant Snyder and Defendant Rose joined the City Counsel.

25.     Following this November 16 meeting, and because Mr. Jones could no longer endure the retaliatory and harassing behavior that was continuing to occur following his whistleblower and retaliation reports, Mr. Jones agreed to enter into negotiations with the City for a separation of employment from his position as City Manager.  These negotiations resulted in an agreement that Mr. Jones would be terminated without Cause, and that Mr. Jones and the City would enter into a Separation Agreement, as well as a Consulting Agreement to assist during the transition to a new City Manager.

26.     On November 21, 2019, the Hutto City Attorney presented a Separation Agreement—which the City Attorney had drafted on behalf of the City—to the City Council in Executive Session.  Pursuant to the terms of the Separation Agreement, the City and Mr. Jones agreed that Mr. Jones would separate from employment with the City on December 31, 2019, and that such separation "shall be a termination without cause" pursuant to Mr. Jones' 2018 Employment Agreement.  The Separation Agreement further provides that, pursuant to the Employment Agreement, Mr. Jones would receive a severance payment of twelve (12) months of his current base salary, payment of accrued and unused sick leave and vacation time, and continuation of group health benefits for twelve (12) months.

27.     The Separation Agreement also contains a Non-Disparagement provision in which the City specifically agreed not to "disparage" or "make any derogatory comments, whether

written or oral, against Mr. Jones."  Finally, the Separation Agreement also contains a mutual waiver and release of any and all claims, whether known or unknown, that the City or Mr. Jones had or may have had against the other.  These claims included, without limitation, employment-related claims and the Whistleblower Act, discrimination, and retaliation claims of which Mr. Jones had previously notified the City.

28.     In addition to this Separation Agreement, the City Attorney also presented a Consulting Agreement with Mr. Jones in which he would consult with the City from January 1, 2020 through July 31, 2020, on matters involving the Perfect Game development and the Sports, Health and Entertainment District.

29.     Following this Executive Session, Council Member Scott Rose made a motion to enter into the Separation Agreement and Consulting Agreement with Mr. Jones, which was seconded by Mayor Pro-Tem Tom Hines.  The motion to enter into the Separation Agreement and Consulting Agreement then passed with a super majority vote of 5-1.  The Separation Agreement and Consulting Agreement were signed and executed by Mayor Doug Gaul and City Manager Odis Jones the next day, November 22, 2019.  A true and correct copy of the Separation Agreement is attached hereto, and incorporated herein for all purposes at Exhibit 2; and a true and correct copy of the Consulting Agreement is attached hereto, and incorporated herein for all purposes as Exhibit 3.

30.     On November 25, 2019—only three days after Mr. Jones and the City of Hutto executed these legally binding agreements—a press release was issued from "the Hutto City Council Office of Place 3 Mike Snyder and Hutto City Council Office Place 6 Tanner Rose" publishing disparaging and derogatory statements regarding Mr. Jones in blatant violation of the Non-Disparagement provisions of the Separation Agreement.  Specifically, the press release stated

that "we are appalled at the action taken by our City Council" in entering into the Agreement and "amazed that there would be an action taken to pay out the City Manager without considering the conduct over the past 6 months as well as the ongoing investigation."  These statements from the press release were also included in a November 26, 2019 article in the Austin American Statesman (as well as other news media), in which City Council Member Mike Snyder was further quoted as stating that "in the past six months, Jones had shown disrespect to residents and council members, including telling the media that Snyder had interfered with the developer of the Star Ranch subdivision."  Plaintiff sent a cease and desist letter to the City through his attorney on December 4, 2019 regarding these false and defamatory statements, warning that the City was in breach of the Separation Agreement as a result.

      31.     On December 5, 2019, the City Council—and more specifically City Council Members Snyder and Rose—attempted to take action to amend the Separation Agreement and Consulting Agreement that had just been executed and entered into by and between the City and City Manager Jones less than two weeks earlier.  Also on December 5, 2019, the City Council caused a second investigation to be conducted into the same employee's allegations that had previously been fully investigated and found to be unsubstantiated by the City of Hutto's Human Resources Department and City Attorney's Office before the City and Mr. Jones executed and legally entered into the Separation Agreement and Consulting Agreement.  Upon information and belief, it has never been the policy or custom of the City to conduct second outside investigations of claims against non-African-American employees that have been found to be unsubstantiated by the City's Human Resources Department and City Attorney's Office.

32.     While this second investigation was being conducted, statements were made by Defendant Snyder and others that they were going to find "some reason" to make sure that Mr. Jones would never receive his severance under the Separation Agreement.

33.     On or about December 19, 2019, the outside employment lawyer who conducted the second investigation provided a report to City Council that she also found the employee's claims against Mr. Jones to be unsubstantiated.  Upon information and belief, this investigator also told the City Council that they should pay Mr. Jones his severance, as it was legally due to him.

34.     Because several of the Council Members were apparently upset about hearing that the allegations against Mr. Jones were unsubstantiated and were hoping for a different result from this second investigation, Counsel Member Snyder and others then came up with a scheme, which was later put into action, to attempt to extort and/or blackmail Mr. Jones out of receiving the severance payments under the Separation Agreement.  Upon information and belief, the scheme's plan was to threaten to embarrass Mr. Jones publicly by threatening to leak information to the press and public regarding the employee's claims, which had been found to be unsubstantiated by two separate investigations, if Mr. Jones would not agree to give up the severance payments under the Separation Agreement. The City Attorney was then directed by Defendant Snyder and the City Council to contact Mr. Jones and carry out this plan.  Upon information and belief, no such plan or scheme had ever been attempted with regard to any non-African-American employees' severance or misconduct allegations.

35.     In addition, following this Executive Session, on December 19, 2019, and despite the exoneration of Mr. Jones by two separate investigations regarding the employee's allegations, the City Council nevertheless voted to place Mr. Jones on administrative leave and unilaterally breached and terminated the valid Consulting Agreement.  On December 20, 2019, Plaintiff sent

another letter to the City through his attorney notifying them that the continued actions being taken against him were the result of racial animus and in breach of his contractual and legal rights.

36.     That same day, December 20, 2019, then-City Attorney Bill Bingham contacted Mr. Jones and told him that the City Council Members had directed him to tell Mr. Jones that if he did not agree to walk away from his existing severance payments due under the Separation Agreement, then they (the City Council or individual members) were going to release embarrassing information about Mr. Jones to the public and the press.  Mr. Bingham further told Mr. Jones that the City Council would not listen to the City Attorneys' advice as they had advised the City not to do what the Council was insisting on doing.

37.     Mr. Jones then told Mr. Bingham that the City Council Members knew that Mr. Jones had not committed any misdeeds as alleged, as the claims had been proven to be unsubstantiated by multiple investigators.   Mr. Jones also told Mr. Bingham that these actions by the City Council could constitute a criminal matter of extortion, blackmail, and a racist act designed to destroy Mr. Jones personally, just as certain Council Members had previously admitted that they were trying to do.  Mr. Bingham agreed, but said that he could not get the Council Members to do something differently.

38.     Later that same day, Mr. Jones was also contacted by another representative of the City Attorney's office, Mike Shaunessy, who said that he had been directed by Defendant Snyder and other Council Members that unless Mr. Jones walked away from the severance money under the Separation Agreement that the City Council members were going to embarrass him publicly.

39.     The next day, December 21, 2019, Mr. Shaunessy came to Mr. Jones' house.  Mr. Shaunessy told Mr. Jones that "this isn't going to be good for you," "you need to negotiate something different than your current Separation Agreement," and if Mr. Jones didn't, "it's going

to be really bad."  Mr. Jones then asked "what are they wanting out of me?"  Mr. Shaunessy stated

that City Council Member Mike Snyder and City Council Member Peter Gordon were not going

to stand for the language in the Separation Agreement that Mr. Jones was terminated without

Cause.  Mr. Jones told Mr. Shaunessy that did not make any sense, that he was being terminated

without Cause pursuant to his Employment Agreement, that the City had released all claims, that

it had been approved by a supermajority and executed by the Mayor, and there wasn't anything

new in this latest investigation.  Mr. Shaunessy agreed and said none of the claims could be

substantiated in the new investigation.  Mr. Jones then said that the City needs to move on, let him

go on with his life and stop trying to ruin him and his reputation.  Mr. Shaunessy agreed, and said

that it didn't make any sense, but the City Council Members were not going to allow Mr. Jones to

get paid under the current Separation Agreement.   Mr. Shaunessy further stated that these City

Council members would try and hold Mr. Jones up in court for years, and that the City Council

will say whatever they want about him in a lawsuit and he won't be able to do anything about it,

and it will damage his reputation.

40.     Mr. Shaunessy then said these City Council members wanted to have Mr. Jones be

paid "a fee" and have him resign.  Mr. Jones responded that is not what has happened—the City

Council had already terminated his contract without Cause.  Mr. Shaunessy agreed, but said that

is not what the Council was now telling the City Attorney they wanted—and if Mr. Jones did not

agree to do that, it was going to be bad for him to get a job and move on.  Mr. Jones then asked

what if he agreed to these demands, just gave them what they wanted and resigned; how would he

know they would live up to that agreement?  Mr. Shaunessy assured Mr. Jones that he had spoken

with the Council Members, and they had agreed that they would stand down and would not come

after him if he did this.

41.     Around this same time, Mr. Jones was also contacted about the City's scheme by Dan Lowe, a real estate developer who was then involved in negotiations with the City regarding significant City contracts.   Mr. Lowe told Mr. Jones that he was being directly solicited by Defendant Snyder to pay Mr. Jones the severance payments that were owed to him under the Separation Agreement through the developer's own development fees so that the City would not have to pay Mr. Jones.   Mr. Lowe also stated that Defendant Snyder told him that if Mr. Jones would go along with this scheme, then Member Snyder had the power to make the complaining employee's embarrassing claims "go away."   However, Defendant Snyder further told Mr. Lowe that if Mr. Jones refused to agree to engage in this scheme, then the unsubstantiated allegations against Mr. Jones "would be made public" and "would ruin his life and career."

42.     Mr. Jones refused to be involved in any way in the City's proposed scheme, which he viewed as motivated in part by racial animus because of the fact that similar schemes had never been visited upon white City officials, and instead contacted the Hutto Police Department and made a report of extortion and abuse of official capacity/public office.   Mr. Jones also reported the scheme to the City's Public Safety Director and Chief of Police, who stated that they would in turn report it to the FBI.   Upon information and belief, these criminal investigations remain ongoing.

43.     On January 3, 2020, the City paid Mr. Jones the $412,000 severance payment set forth in the Separation Agreement, which amount represented twelve (12) months of Mr. Jones' then-current annual salary and his accrued and unused vacation and sick days, as required by Mr. Jones' Employment Agreement with the City for a termination without Cause.

44.     In the months since Mr. Jones separated his employment, the City, Defendant Snyder and Defendant Rose have continued to engage in illegal and discriminatory actions against Mr. Jones, to defame and disparage him in breach of the Separation Agreement.   In addition,

Defendants Snyder and Rose have separately and individually taken actions to tortiously interfere with Plaintiff's business opportunities.  These illegal actions have included, without limitation:

- Three days after Plaintiff and the City of Hutto executed the Separation Agreement, a press release was issued on November 25, 2019 from "the Hutto City Council Office of Place 3 Mike Snyder and Hutto City Council Office Place 6 Tanner Rose," stating: "we are appalled at the action taken by our City Council" in entering into the Agreements and "amazed that there would be an action taken to pay out the City Manager without considering the conduct over the past 6 months as well as the ongoing investigation."  These statements from the press release were also included in a November 26, 2019 article in the Austin American Statesman (as well as other news media), in which City Council Member Mike Snyder was further quoted as stating that "in the past six months, Jones had shown disrespect to residents and council members, including telling the media that Snyder had interfered with the developer of the Star Ranch subdivision."

- Defendant Snyder has contacted businesspeople and told them that they should not do business with Mr. Jones and that he was not a good person.

- Defendant Snyder and Defendant Rose have publicly stated, posted on social media, and provided the news media with disparaging and defamatory statements regarding Mr. Jones' tenure as City Manager, including that Mr. Jones mis-managed public funds and violated the law by entering into "illegal" contracts on behalf of the City.

- Upon information and belief, Defendant Snyder and/or Defendant Rose were involved in the publication of disparaging and defamatory statements to the Mayor and City Council Members of Missouri City, Texas, including emails sent through an anonymous email address, including statements such as Mr. Jones "destroy(ed)" the City of Hutto during his tenure, he is a "bully", "manipulative", "has cost the city of Hutto millions in lawsuits, legal fees, egregious spending, 60% staff turnover YOY," that "it will take Hutto at least a decade to recover, and "don't be his next victim."

- Defendant Snyder has published statements that he was going to "destroy" Mr. Jones.

45.    This racially motived crusade against Mr. Jones culminated in the City of Hutto voting to pass Resolution R-2020-139 on December 3, 2020 purporting to declare as "void" the Separation Agreement, which the City had entered into with Mr. Jones more than a year earlier. A true and correct copy of which is attached hereto, and incorporated herein for all purposes as

Exhibit 4.  In addition, this resolution also purported to retroactively "re-terminate" Mr. Jones' employment with the City, effective December 31, 2019.  Upon information and belief, the City had never taken such an action against any of the previous City Managers (all of whom were white), or any other employee of the City.  Further, the City took this unprecedented action, based on false and stigmatizing purported reasons, retroactively without providing Mr. Jones a name-clearing hearing or even advance notice so as to allow him to request one, as has been previously afforded to other non-African-American employees of the City, including a former City Manager, who is white.

46.     The next day, December 4, 2020, the City Manager and the City Attorney for the City of Hutto sent Mr. Jones a letter purportedly "rescinding" the Separation Agreement and "demanding" the return of the $412,000 that had been lawfully owed and paid to Mr. Jones eleven months earlier.  A true and correct copy of which is attached hereto, and incorporated herein for all purposes, as Exhibit 4.  The December 4, 2020 letter fails to mention that, irrespective of the Separation Agreement (which was validly entered into), the City still owed Mr. Jones the $412,000 pursuant to the valid Employment Agreement, the terms of which have never been challenged by the City.

47.     Mr. Jones has been warned by individuals with personal knowledge of the actions and internal discussions by the City, Defendant Snyder, and Defendant Rose set forth in this Complaint that these actions have been consistently driven by blatant racial animus toward Mr. Jones.  Mr. Jones has been told by these individuals that the City and the individual Defendants are "out to get him, and anyone associated with him," that "they won't stop," and that the individuals reporting this behavior fear for the safety of Mr. Jones and his family.  Moreover, the overtly racist  and egregious actions toward Mr. Jones have led several individuals—those who

have had the courage and integrity to refuse to engage in such actions—to resign, to be pressured to resign, to threaten to resign, and to be terminated.  It is no coincidence that the City's previous City Attorneys, auditors, and Interim City Manager are no longer working with the City.

48.     Moreover, the blatant racial animus of the City and City Council Members Snyder and Rose toward Mr. Jones has even been confirmed in writing.  In a letter signed by four former Hutto City Council Members with personal knowledge of these illegal actions (the "Letter"), they stated that during his tenure as City Manager, Mr. Jones has come under attack by adversaries on the City Council, a lot of which has been politically and racially motivated because of Mr. Jones' ethnicity.

49.     Following the filing of this federal lawsuit, Defendants Mike Snyder, Tanner Rose and Warren Hutmacher conspired to take action, and did take action, to deter, intimidate and threaten witnesses from testifying in this lawsuit freely, fully and truthfully.

50.     In the weeks after the filing of Plaintiff's Original Complaint, one anticipated witness (referred to herein as "Witness 1") was informed by Defendant Hutmacher that Defendant Snyder and Defendant Rose had told Defendant Hutmacher that the witness' job with the City of Hutto would be defunded unless Witness 1 resigned, and Witness 1 was forced from his law enforcement position within the City of Hutto.  Witness 1 has attested that he believes this was done because of his association with Plaintiff and his anticipated testimony of the racially motivated animus and defamatory conduct Plaintiff has endured and which Witness 1 witnessed.

51.     A second witness (referred to herein as "Witness 2"), who was a former Hutto City Council Member and one of the signatories of the Letter referenced in Paragraph 48 of this First Amended Complaint, has been, since the filing of the lawsuit and public mention of the Letter, harassed, pressured to withdraw or retract the Letter, and interfered with by Defendants Snyder

and Rose.  In addition, Defendants Snyder and Rose conspired to privately and publicly pressure the leadership of the professional organization where Witness 2 is employed to "take action" as a result of the Letter, which the leadership of the professional organization construed to mean that Witness 2 should be terminated.

52.     Defendants Snyder and Rose further conspired to deter the testimony of Witness 2 through threat and intimidation by taking action to retaliate against the professional organization where Witness 2 is employed by ceasing any City involvement or participation in the organization's fundraising events; prohibiting any City employee from attending the organization's events in their official capacities; seeking to cease the funding of any agreements with the organization by the City; seeking to void any agreements or Memoranda of Understanding between the City and the organization; and conspiring with Defendant Hutmacher to cease spending any City funds or staff time for anything related to the organization.

## CAUSES OF ACTION

### COUNT 1: Racial Discrimination and Retaliation Under 42 U.S.C. § 1981 (through or under 42 U.S.C. § 1983) (Defendant City of Hutto)

53.     Plaintiff is a member of a protected class (African-American race).

54.     42 U.S.C. §1981 (through or under 42 U.S.C. §1983 as to the City of Hutto) prohibits race discrimination in the making and enforcing of contracts, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges and conditions of the contractual relationship.

55.     Defendant City of Hutto intentionally discriminated against Plaintiff Odis Jones because of his race in violation of 42 U.S.C. §1981 (through or under 42 U.S.C. §1983) by treating Plaintiff differently, due to an official policy promulgated and put into place by the City

policymaker and explicitly demonstrated through the various actions detailed herein, than any previous white City Manager or white City employee; by attempting to modify the Separation Agreement between Plaintiff and Defendants both before December 31, 2019 and after; by terminating the Consulting Agreement between Plaintiff and Defendants and failing to pay Plaintiff the proper compensation owed under the Consulting Agreement; by attempting to avoid the payment obligations of the Separation Agreement, Consulting Agreement and Employment Agreement between Plaintiff and Defendants; by discharging Plaintiff amidst allegations of misconduct, stigmatizing him and foreclosing him from other employment opportunities and business contracts; by not affording him or providing advance notice which would have allowed him the opportunity of a name-clearing hearing, unlike had been offered to similarly situated former non-African American Hutto employees; by attempting to terminate the Separation Agreement; by retaliating against Plaintiff, ultimately culminating in his termination and the breach of his Consulting Agreement for making a complaint regarding hostile work environment and a request to have his employment rights be protected; by attempting to rescind the Separation Agreement through City Resolution R-2020-139; by attempting to avoid the City's obligations under the Separation Agreement, Consulting Agreement and Employment Agreement; by causing Plaintiff to rely to his detriment on the City's promises and obligations under the Separation Agreement and Employment Agreement; by the City being unjustly enriched by the Separation Agreement and Employment Agreement; and by the City breaching the Separation Agreement and Employment Agreement, including without limitation, the respective termination provisions, payment provisions and non-disparagement provisions.

56.     In addition, and in the alternative if the Court finds that the Separation Agreement is invalid and therefore the release of claims therein is invalid, Mr. Jones brings claims against the

City of Hutto under 42 U.S.C. § 1981 and § 1983 for race-based discrimination and retaliation in the employment context for claims that arose prior to the execution of the Separation Agreement which were purportedly released by the Separation Agreement.  There is no legitimate non-discriminatory reason for Defendants' actions, and if such a reason is propounded, it is a pretext. These claims are brought in the alternative, and only to the extent the Separation Agreement is void, because the City is equitably estopped from having Mr. Jones release claims pursuant to the Separation Agreement and then later claim that the Separation Agreement is void.

57.     These unlawful practices demonstrated and implemented by the City of Hutto as part of its official policy and custom were, and are, a direct cause of Plaintiff's damages, as more fully set forth herein, and are the moving force behind the City's violations of 42 U.S.C. § 1981.

**COUNT 2: Racial Discrimination Under**
**42 U.S.C. § 1981**
**(Defendants Mike Snyder and Tanner Rose,**
**in their Individual and Non-Official Capacities)**

58.     Plaintiff is a member of a protected class (African-American race).

59.     42 U.S.C. §1981 prohibits race discrimination in the making and enforcing of contracts, including the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges and conditions of the contractual relationship.  These protections apply also to private actions (for example, and not as limitation, those taken by part-time City Councilmembers Snyder and Rose which have no legitimate connection to Snyder and Rose's duties as Councilmembers) and to prospective and existing contractual relationships that extend beyond the employment contract relationship between the City of Hutto and Plaintiff. Defendants Snyder and Rose took affirmative steps, outside of the bounds of their part-time City Council positions, to interfere with a multitude of Plaintiff's contractual rights, including

contractual rights with third parties. In protecting the right to make contracts, section 1981 proscribes not only discrimination by a contracting party at contract-formation stage, but also discriminatory interference by third parties with the exercise of right to make contracts.

60.     Defendant Snyder and Defendant Rose had the intent to discriminate against Plaintiff on the basis of his race, as demonstrated by, at minimum, their myriad actions taken against Plaintiff and not against similarly situated non-African-American individuals. Moreover, these actions of discrimination concern the making or enforcement of contracts and prospective contracts with both private and public entities. Defendant Snyder and Rose cannot be said to be acting under the color of state law when they undertook their discriminatory actions—separate and apart from the actions that constitute action undertaken by the City in its conduct in violation of 42 U.S.C. § 1981.

### COUNT 3: Conspiracy to Interfere with Civil Rights
### Under 42 U.S.C. § 1985(2)
### (Defendants Snyder, Rose and Hutmacher,
### in their Individual and Non-Official Capacities)

61.     As set forth in Paragraphs 49-52 of this First Amended Complaint, Defendants Snyder, Rose and Hutmacher conspired to deter by intimidation or threat, Witness 1 and Witness 2, from attending/participating in this federal lawsuit and from testifying in this federal lawsuit freely, fully and truthfully, in violation of 42 U.S.C. § 1985(2) and 18 U.S.C. § 1512, resulting in Plaintiff being denied the free exercise or enjoyment of the rights and privileges secured to Plaintiff by the Constitution or laws of the United States, including Plaintiff's Fourteenth Amendment right to due process of law and equal protection of law in this federal lawsuit.

62.     These unlawful practices committed by Defendants were, and are, a direct cause of Plaintiff's damages, as more fully set forth herein.

## COUNT 4: Breach of Contract
## (Defendant City of Hutto)

63.     On or about July 20, 2018, Defendant City of Hutto and Plaintiff Odis Jones entered into a written Employment Agreement with regard to his continued employment as City Manager. This Employment Agreement is a valid, legal and enforceable contract.

64.     On or about November 22, 2019, the City of Hutto and Plaintiff Odis Jones entered into a written Separation Agreement with regard to the termination of his employment as City Manager.  This Separation Agreement is a valid, legal and enforceable contract.

65.     On or about November 22, 2019, the City of Hutto and Plaintiff Odis Jones entered into a written Consulting Agreement, whereby Plaintiff was to provide certain consulting services to the City and be compensated a monthly fee of $15,000 for such consulting services.

66.     Defendant City of Hutto has breached the Consulting Agreement by unilaterally terminating the Consulting Agreement and by not paying Plaintiff the compensation due and owing to him under the Consulting Agreement.

67.     Defendant City of Hutto has breached the Employment Agreement with Plaintiff in multiple ways, including without limitation: unlawfully attempting to avoid Defendant City of Hutto's payment obligations under the Employment Agreement for an employment termination "without cause"; unlawfully attempting to avoid Defendant City of Hutto's obligations under the Employment Agreement; unlawfully causing Plaintiff to rely to his detriment on Defendant City of Hutto's promises and obligations under the Employment Agreement; and by Defendant City of Hutto being unjustly enriched by the Employment Agreement.

68.     Defendant City of Hutto has breached the Separation Agreement with Plaintiff in multiple ways, including without limitation:  unlawfully attempting to modify the Separation Agreement between Plaintiff and Defendant City of Hutto; unlawfully attempting to avoid the City

of Hutto's payment obligations of the Separation Agreement; unlawfully attempting to terminate the Separation Agreement; by unlawfully attempting to rescind the Separation Agreement; unlawfully attempting to avoid Defendant City of Hutto's obligations under the Separation Agreement; unlawfully causing Plaintiff to rely to his detriment on Defendant City of Hutto's promises and obligations under the Separation Agreement; by Defendant City of Hutto being unjustly enriched by the Separation Agreement; and by Defendant City of Hutto breaching the termination provisions, payment provisions and non-disparagement provisions of the Separation Agreement.

69.     With regard to the non-disparagement provisions of the Separation Agreement, Defendant City of Hutto specifically agreed not to "disparage" or "make any derogatory comments, whether written or oral, against Mr. Jones." The City breached these provisions of the Agreement through the publication of multiple false and defamatory statements made by the City and Council Members Snyder and Rose following the execution of the Separation Agreement on November 22, 2019 through the present, including, without limitation:

- Three days after Plaintiff and the City of Hutto executed the Separation Agreement, a press release was issued on November 25, 2019 from "the Hutto City Council Office of Place 3 Mike Snyder and Hutto City Council Office Place 6 Tanner Rose," stating: "we are appalled at the action taken by our City Council" in entering into the Agreements and "amazed that there would be an action taken to pay out the City Manager without considering the conduct over the past 6 months as well as the ongoing investigation." These statements from the press release were also included in a November 26, 2019 article in the Austin American Statesman (as well as other news media), in which City Council Member Mike Snyder was further quoted as stating that "in the past six months, Jones had shown disrespect to residents and council members, including telling the media that Snyder had interfered with the developer of the Star Ranch subdivision."

- Defendant Snyder has contacted businesspeople and told them that they should not do business with Mr. Jones and that he was not a good person.

- Defendant Snyder and Defendant Rose have publicly stated, posted on social media, and provided the news media with disparaging and defamatory statements

regarding Mr. Jones' tenure as City Manager, including that Mr. Jones mis-managed public funds and violated the law by entering into "illegal" contracts on behalf of the City.

- Upon information and belief, Defendant Snyder and/or Defendant Rose were involved in the publication of disparaging and defamatory statements to the Mayor and City Council Members of Missouri City, Texas, including emails sent through an anonymous email address, including statements such as Mr. Jones "destroy(ed)" the City of Hutto during his tenure, he is a "bully", "manipulative", "has cost the city of Hutto millions in lawsuits, legal fees, egregious spending, 60% staff turnover YOY," that "it will take Hutto at least a decade to recover, and "don't be his next victim."

70.     The breaches committed by Defendant City of Hutto of the Employment Agreement, Consulting Agreement, and Separation Agreement were, and are, a direct cause of Plaintiff's damages, as set forth herein.

## COUNT 5: Texas Whistleblower Act – Adverse Action and Retaliation
## (Defendant City of Hutto)

71.     This claim is brought in the alternative if the Court finds that the Separation Agreement is invalid and therefore the release of claims contained therein is invalid.  Mr. Jones reported a violation of law pursuant to Texas Government Code Section 554.002 on August 14, 2019 to an appropriate law enforcement authority and was subsequently subjected to adverse employment action by the City and members of the City Council for reporting the violation. Although this claim was intentionally released by Mr. Jones by virtue of the negotiation and execution of the Separation Agreement, it is brought here in the alternative because the City is equitably estopped, and the applicable statute of limitations is equitably tolled, from the City's having negotiated with Mr. Jones to release claims pursuant to the Separation Agreement and then later claiming that the Separation Agreement is void.

72.     Mr. Jones made a good faith report of a violation of law by the City of Hutto and certain City Council members.  As a result of this report, Mr. Jones was retaliated against, an

unjustified series of investigations were opened against him, his name and reputation was sullied, and he was ultimately terminated.  There was no legitimate basis for this, and to the extent one is proffered, it is mere pretext.  Mr. Jones was in the midst of initiating action against the City of Hutto for violations of the Texas Whistleblower Act when the City entered into negotiations with him which ultimately led to his—and the City's—execution of the Separation Agreement.  In the Separation Agreement, Mr. Jones released his Texas Whistleblower Act claims.  Now, and in the alternative, if the Separation Agreement is declared void, under the principles of equitable estoppel, equitable tolling, and unjust enrichment, Mr. Jones should be entitled to assert his Whistleblower claims.

## COUNT 6: Declaratory Judgment
### (Defendant City of Hutto)

73.     Plaintiff requests a declaratory judgment under Federal Rule of Civil Procedure 57; 28 U.S.C. §§2201 and 2202; and the Texas Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.001 et. seq., that:

    a.  the Employment Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018, is and remains a valid, legal and enforceable contract under federal and Texas law;

    b.  the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, is and remains a valid, legal and enforceable contract under federal and Texas law;

    c.  Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 4.2 of the Employment Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018;

d.   Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 2 of the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019; and

e.   Defendant City of Hutto's attempted actions to void, rescind and/or avoid the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, through Resolution R-2020-139, were *ultra vires* without legal or discretionary authority, in violation of Plaintiff's statutory and constitutional rights, void, invalid and of no legal effect.

## COUNT 7: Tortious Interference with Existing Contracts
### (Defendants Snyder and Rose, in their Individual and Non-Official Capacities)

74.     By directly or indirectly publishing false, defamatory and disparaging public statements about Plaintiff in a way that was unrelated to their performance of duties as part-time City Councilmembers, and by stating that members of the community should not do business with Plaintiff in a way that was unrelated to their performance of duties as part-time City Councilmembers, Defendant Mike Snyder and Defendant Tanner Rose willfully and intentionally interfered with Plaintiff's business contracts and employment (beyond his employment with the City of Hutto).

75.     Defendants Mike Snyder's and Tanner Rose's interference directly and proximately caused injury to Plaintiff, which were, and are, a direct cause of Plaintiff's damages, as set forth herein.

## COUNT 8: Tortious Interference with Prospective Business Relations
### (Defendants Snyder and Rose, in their Individual and Non-Official Capacities)

76.     By directly or indirectly publishing false, defamatory and disparaging statements about Plaintiff in a way that was unrelated to their performance of duties as part-time City Councilmembers, and by stating that members of the community should not do business with Plaintiff in a way that was unrelated to their performance of duties as part-time City Councilmembers,, Defendant Mike Snyder and Defendant Tanner Rose willfully and intentionally interfered with Plaintiff's prospective business relations and employment.

77.     Defendants Mike Snyder's and Tanner Rose's interference directly and proximately caused injury to Plaintiff, which were, and are, a direct cause of Plaintiff's damages, as set forth herein.

## COUNT 9: Intentional Infliction of Emotional Distress
### (Defendants Snyder and Rose, in their Individual and Non-Official Capacities)

78.     By directly or indirectly publishing false, defamatory and disparaging public statements about Plaintiff in a way that was unrelated to their performance of duties as part-time City Councilmembers, and by stating that members of the community should not do business with Plaintiff in a way that was unrelated to their performance of duties as part-time City Councilmembers, Defendant Mike Snyder and Defendant Tanner Rose intentionally inflicted emotional distress on Plaintiff.

79.     Defendants Mike Snyder and Tanner Rose acted intentionally in their conduct toward Plaintiff Odis Jones.

80.     Defendants' conduct was extreme and outrageous.

81.     Defendants' conduct caused Plaintiff severe emotional distress.

82.     Defendants' intentional infliction of emotional distress toward Plaintiff directly and proximately caused injury to Plaintiff, which were, and are, a direct cause of Plaintiff's damages, as set forth herein.

## DAMAGES

83.     As a result of Defendant's unlawful conduct, Plaintiff has suffered economic damages, including past and future lost income, lost earnings, and lost benefits under contract or employment relationship.  Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to, pecuniary loss, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.  Plaintiff additionally brings suit for punitive and exemplary damages.

## ATTORNEYS' FEES AND EXPENSES

84.     A prevailing party may recover reasonable attorneys' and experts' fees under 42 U.S.C. §1981, §1985 and §1988. In addition, the court may award costs and reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.009 and 38.001.  Plaintiff seeks all reasonable and necessary attorneys' fees in this case from Defendants, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals.  Plaintiff additionally brings suit for expert fees and all costs associated with the prosecution of this action.

## JURY DEMAND

85.     Plaintiff demands a trial by jury of all the issues and facts in this case and tenders herewith the requisite jury fee.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

a.      The Court assume jurisdiction of this cause;

b.      The Court award Plaintiff damages, including exemplary and punitive damages as specified above;

c.      The Court award Plaintiff's reasonable attorneys' and expert fees and costs;

d.       The Court declare that the Employment Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018, is and remains a valid, legal and enforceable contract under federal and Texas law;

e.      The Court declare that the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, is and remains a valid, legal and enforceable contract under federal and Texas law;

f.      The Court declare that Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 4.2 of the Employment Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about July 20, 2018;

g.      The Court declare that Plaintiff Odis Jones is legally owed and entitled to the payments from Defendant City of Hutto set forth in Section 2 of the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019;

h.      The Court declare that Defendant's attempted actions to void, rescind and/or avoid the Separation Agreement entered into by and between Defendant City of Hutto and Plaintiff Odis Jones on or about November 22, 2019, are void, invalid and of no legal effect;

i.      The Court award Plaintiff pre- and post-judgment interest at the highest rates allowed;

j.      The Court enter a Permanent Injunction enjoining the City from continuing to make disparaging and defamatory statements in violation of the Separation Agreement; and

k.      The Court enter a Permanent Injunction protecting Plaintiff's constitutional and other rights under 42 U.S.C. § 1985.

Plaintiff further prays for any such other relief as the Court may find proper, whether at law or in equity.

Respectfully submitted,

By: */s/ Edward M. ("Ted") Smith*
Edward M. "Ted" Smith
State Bar No. 00791682
tsmith@cornellsmith.com
Andrew Broadaway
State Bar No. 24082332
abroadaway@cornellsmith.com

**CORNELL SMITH MIERL BRUTOCAO BURTON, LLP**
1607 West Avenue
Austin, Texas 78701
Telephone:  (512) 328-1540
Telecopy:   (512) 328-1541

**ATTORNEYS FOR PLAINTIFF ODIS JONES**