IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ODIS JONES, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:20-cv-1210 |
| | § | |
| CITY OF HUTTO, | § | |
|     Defendant. | § | |
| | § | |

### DEFENDANT CITY OF HUTTO'S RULE 59 MOTION FOR NEW TRIAL

TO THE HONORABLE UNITED STATES DISTRICT COURT:

    NOW COMES Defendant City of Hutto, Texas ("City" or "Defendant"), and subject to, and without waiving any affirmative defenses or jurisdictional challenges that may be raised or filed in other and further dispositive motion(s) filed or proceedings engaged in by the Defendant, Defendant files this its Rule 59 Motion for New Trial conditionally on the disposition of its Renewed Motion for Judgment as a Matter of Law, and respectfully submits to the Court the following:

1.    Federal Rule of Civil Procedure 59(a)(1)(A) authorizes the court to, on motion, grant a new trial on all or some of the issues to any party after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. This motion is presented conditionally upon the Court's Judgment on Defendant's Renewed Motion for Judgment as a Matter of Law. Pursuant to Federal Rule of Civil Procedure 50(c)(1), if the Court grants

Defendant's Renewed Motion for Judgment as a Matter of Law, "it must also conditionally rule on this Motion for New Trial determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial."

**Certificate of Conference**

Defense counsel has conferred with counsel for plaintiff and this motion is opposed.

**Status of the Case**

On March 21, 2023, the court entered a Final Judgment.[1]

**The Grounds for this Motion**

The Judgment is contrary to the evidence and the law.

The Jury failed to follow the Jury Instructions.

The Final Judgment awarded $12.5 million found by the jury.

Defendant is entitled to a new trial on liability and damages or a remittitur under Rule 59(a).

**Factual Background**

    **A.  The Damage Award**

The jury awarded Odis Jones:

    $8,000,000 for a violation of Section 1981 in compensatory damages.

    $4,500,000 for a breach of contract in consequential damages and attorney's fees.

    **B.  Odis Jones Damage Evidence**

The only evidence of damages was Odis Jones' testimony alone. Mr. Jones testified superficially and generally as to mental anguish and reputation damages without providing specific details to support the award. Contract damages are subject to

---

[1] Dkt #127.

statutory immunity and the award of contract damages lack subject matter jurisdiction. Damages awarded include damages not recognized by common law.

**Argument and Authorities**

2. Pending before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law. By seeking a new trial, City does not concede either the liability or damages findings and will continue to contest them on appeal.

3. The damage awards are excessive under the current federal case law. The awards for Mr. Jones vastly exceed the maximum recovery sanctioned in similar cases. Because so much of each award is beyond the maximum recovery, the verdict was the result of passion or prejudice, and a new trial a new trial on damages is warranted. Alternatively, the court should remit the damages.

**A. Legal Standard**

4. Rule 59 does not limit the possible grounds for a **new** trial. *See Honestech, Inc. v. Sonic Solutions*, 725 F. Supp. 2d 573, 577 n.1 (W.D. Tex. 2010). The rule provides a party may seek "a new trial on all or some of the issues … for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Or, as broadly stated by the Fifth Circuit, a district court "has discretion to grant a new trial … when it is necessary to do so to prevent an injustice." *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995); *accord* 11 WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE § 2803 (3d ed. 2012) ("Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is the judge's right, and indeed his duty to order a new trial if he deems it in the interest of justice to do so.").

5. Where the jury's excessive award results from passion and prejudice, the proper remedy is not remittitur but a new trial. *Whitehead*, 163 F.3d at 275 (5th Cir. 1998); *Auster Oil & Gas, Inc.*

*v. Stream*, 835 F.2d 597, 603-04 (5th Cir. 1988). In some cases, the sheer excessiveness of the award indicates the award was motivated by passion and prejudice which is not cured even by substantial remittitur. In *Wells v. Dallas lndep. Sch. Dist.*, 793 S.W.2d 679, 684 (5th Cir. 1986), a school administrator deprived of his pre-termination due process rights was awarded $1.9 million, which the district court judge reduced to $250,000. The appellate court determined that the $1.9 million was so excessive that it had to be motivated by passion and prejudice and that the size of the remittitur indicated the final judgment was "not in any way a product of the jury". It was the judge's verdict." The court therefore ordered a new trial.

6.      In *Auster*, the jury awarded punitive damages of $5,000,000, but the district court reduced it to $650,000.00. The Fifth Circuit ordered a new trial on damages because it was "left with the inescapable conclusion that the jury was motivated by passion and prejudice in their award" and a $4.35 remittitur did not cure it. *Auster*, 835 F.2d at 603-04.

7.      A court may not reverse a jury verdict for excessiveness except on the "strongest of showings." *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir.1983); *Poliner v. Texas Health Sys.*, 239 F.R.D. 468 (N.D. Tex. 2006), rev'd, 537 F.3d 368 (5th Cir. 2008). The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. *See id.* Yet, when a jury's award exceeds the bounds of any reasonable recovery, the court must grant a remittitur. *See Caldarera*, 705 F.2d at 784. Decisions on motions for new trial and remittitur are committed to the sound discretion of the trial G*eneral Tire and Rubber Co.*, 754 F.2d 1233, 1241 (5th Cir.1985).

8.      When a jury verdict results from passion or prejudice, a new trial is the proper remedy. *See Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 177 (5th Cir. 1992); *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 683-84 (5th Cir.1986); *Westbrook v. General Tire and Rubber Co.*, 754 F.2d

1233, 1242 (5th Cir.1985); *Smith v. City of Seven Points*, 608 F.Supp. 458, 463 (E.D.Tex.1985). But damage awards that are merely excessive or so large as to appear contrary to right reason are subject to remittitur. *Brunnemann*, 975 F.2d at 178; *Westbrook*, 754 F.2d at 1242. If the court believes that a remittitur is more appropriate, it must first offer the plaintiff a choice between accepting a reduction in damages or proceeding with a new trial. *See Smith*, 608 F.Supp. at 463; *Chacon v. Copeland*, 103 F. Supp. 3d 827, 835 (W.D. Tex. 2015). The new trial offered in the case of remittitur should only be limited to the damages issues if it is clear that the issues relating to damages are independent of the issues relating to liability. *Westbrook*, 754 F.2d at 1242; *City of Seven Points*, 608 F.Supp. at 463.

9. In *Westbrook*, the court held that the jury decision was influenced by plaintiff's counsel's improper and prejudicial argument, which called for a new trial, rather than remittitur. It limited the new trial to the issue of damages, because "the factual questions relating to damages [were] sufficiently distinct and independent of those questions pertaining to liability." *Westbrook*, 754 F.2d at 1242. *Westbrook* involved in an accident caused by the defendant's defective tire which caused the plaintiff's truck to veer into a ditch causing significant physical injuries. "The facts of the accident [were] largely undisputed," as were plaintiff's physical injuries. *Id.*

10. But in *City of Seven Points*, which called for a remittitur for a "merely excessive" jury verdict, the court ordered that **a new trial would include both the issue of liability and damages**, because given the nature of the claim, plaintiff could not prove either actual or punitive damages without repeating the previous testimony regarding the occurrence in question. *City of Seven Points*, 608 F. Supp. at 467. Thus, the liability questions were not "sufficiently distinct and independent" from questions concerning damages such that a new trial on the latter issue alone

could be justified.[2]

11. Quite a few cases, without even mentioning the "sufficiently distinct and independent" test mandated by the U.S. Supreme Court, state that the court "can either order a new trial on damages or allow plaintiffs the option of avoiding such a new trial by agreeing to a remittitur of the excessive portion of the award." *E.g., Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir.1988); *Osburn v. Anchor Lab'ys, Inc.*, 825 F.2d 908, 919 (5th Cir. 1987).

12. At some point on the scale an excessive award becomes so large that it can no longer be considered merely excessive. When an award is "so exaggerated as to indicate bias, passion, prejudice, corruption, or other improper motive, remittitur is inadequate, and the only proper remedy is a new trial." *See Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597 (5th Cir. 1988) (finding jury's $5 million punitive damages award so excessive as to indicate inherent passion and prejudice and that it was abuse of discretion to order remittitur rather than new trial); *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 684 (5th Cir. 1986); *see also Burch v. Coca-Cola Co.*, 119 F.3d 305, 320, n.15 (5th Cir. 1997) (noting in ADA and defamation case resulting in $7 million jury verdict that, even in absence of evidentiary deficiencies, "a jury's verdict so grossly excessive as this would most probably warrant a new trial under the standard set forth in *Wells*"); *Hell Graphic Sys., Inc. v. Kingcraft Color Graphics, Inc.*, 998 F.2d 1013 (5th Cir. 1993) (citing *Wells* and stating that "[t]he excessiveness of a damage finding itself can be indicative of passion and prejudice").

13. In *Wells*, a Section 1983 case, the jury awarded $1.9 million to the plaintiff who alleged his summary dismissal violated his 14th Amendment due process rights after he learned by watching the evening news that he had been fired from his post as Assistant Superintendent of the

---

[2] *Id.* at 467 (citing *Gasoline Products, Inc. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931)).

Dallas ISD. The district court granted summary judgment as to any post-termination due process claim (because the DISD had granted Wells a post-termination hearing) but left the damages for the pre-termination deprivation to the jury. The district court reduced the $1.9 million verdict to $250,000. On appeal, the Fifth Circuit **both** reversed the summary judgment in favor of DISD **and** concluded that the jury verdict was motivated by "passion or prejudice." The court found that an award so large that it compelled the district court to reduce it by a factor of seven was inherently indicative of passion or prejudice, because it was "difficult to regard the quarter million remnant of a virtual two-million-dollar verdict as in any significant sense a product of the jury. It was the judge's verdict; a new trial is called for." *Wells*, 793 F.2d at 684.

> ..., at some point on the scale an excessive award becomes so large that it no longer can be considered merely excessive. At that point, when an award is "so exaggerated as to indicate bias, passion, prejudice, corruption, or improper motive," remittitur is inappropriate, and the only proper remedy is a new trial.

*Id.*

The Fifth Circuit followed *Wells* in *Auster Oil & Gas* with respect to a punitive damage award:

> the ratios of the punitive damage awards to remittiturs in this case ranged from 5 to 1 for Carmouche to a stunning 50 to 1 for Mrs. Stream. Even after the remittitur, a punitive damage award of $650,000 **in a case such as this** appears excessive. **These facts, along with our review of the record in this case**, leave us with the **inescapable conclusion that the jury was motivated by passion and prejudice** in their award of punitive damages. Therefore, we hold that a new trial is required on this issue as well.

*Auster Oil & Gas*, 835 F.2d at 597 (5th Cir. 1988).

14.     But, at least one lower court (Louisiana) rejected an "overly broad reading of *Wells*," rejecting the defendants' argument that the bare size of a punitive damages award viewed alongside the compensatory damages award justified granting a new trial, noting that *Auster* was "the only Fifth Circuit decision to even mention this aspect of the *Wells* decision in any substantive fashion." *See In re Actos (Pioglitazone) Prod. Liab. Litig.*, 2014 WL 5461859, at *42 (W.D. La. Oct. 27, 2014).

15.     The court extensively discussed *Wells* and *Auster* and concluded that the court must still review the record and evaluate the facts, not merely compare ratios "when some amorphous bright-line ratio is breached, or some subjective line crossed." It found that *Auster* and *Wells* stand for "the rule" that excessively large damages awards create a suspicion of passion or prejudice of the jury, requiring exploration of the record before concluding that the jury "ran amok" on damages. *Id. See also Westbrook*, 754 F.2d at 1240-41 (noting that in most cases, initially "the size of the verdict" triggers the need to question an award and leads the court "to conclude that something besides the evidence was at work").

**Rogue Jury's Nuclear Verdict Fueled by Passion or Prejudice Warrants New Trial**

16.     As legal counsel argued at the Pre-trial hearing 14 days before trial, Plaintiff's counsel, when pressed on the issue of damages, admitted in open court that Plaintiff has no evidence of damages and anticipated, if successful on the contract liability claims, a nominal judgment. Fast forward to the trial, and the only testimony presented was the testimony of the Plaintiff, who superficially belabored his mental anguish and reputational injury without specificity.[3] Defendant asserts that the Record of the trial contains no legally sufficient evidence whatsoever to support damages.

17.     Additionally, when the jury was sequestered for deliberation, the Court received a number of jury questions which repeatedly sought direction on how to award relief outside of the confines of the Jury Instruction. Dkt. #116-120.

18.     Plaintiff counsel's closing argument sought $913,000 as full compensation for the breach of contract and the Section 1981 claim.

19.     The Jury returned a verdict of $12.5 million. This matter needs a new trial, if it is not

---

[3] Trial Tr. vol. 2 14-15, 68

dismissed on the Record.

**Prohibited Double Recovery Warrants New Trial**

20.     Moreover, regarding damages, City asserts that in a Section 1981 Constitutional "tort" claim. Where the "tort" is the alleged racially motivated breach of contract claim which provides for a first recovery of damages, then a second breach of contract claim provides a second recovery for damages appears to provide for a prohibited double recovery. Because of the intertwined nature of the damages award, Defendant challenges all damage awards as the evidence is not legally sufficient to withstand this motion because it is contrary to Texas law. Texas law limits a single remedy for a single wrong. But a party is entitled to damages based on both theories "if the theories of liability arise from two separate and distinct injuries, and there has been a separate and distinct finding of damages on both theories of liability." Thus, to determine if an election is proper, "the inquiry focuses on whether the damages issue arose from the same set of operative facts." The Court therefore asks whether Plaintiff's remedies flow from a single wrong. Texas courts permit separate forms of recovery for separate wrongs. For example, a court in the Western District of Texas found there was no double recovery where defendants breached their employment contracts and misappropriated a trade secret. The court held that "each of those claims involved different conduct and required proof of disparate elements." The jury heard separate evidence for damages for the two claims.

21.     In the case at bar, the allegations of breach and damages are identical; therefore, the Jury Verdict is a prohibited double recovery and should be vacated on that basis and judgment awarded the Defendant.

**Lack of Standing (Jurisdictional)**

22.     The threshold requirement imposed by Art. III of the Constitution is that those who seek to invoke the power of federal courts must allege an actual case or controversy.[4] *Smit v. SXSW Holding, Inc.*, 903 F.3d 522 5th Cir. (2018); *See Calderon v. Ashmus*, 523 U.S. 740, 745 n.2, 118 S. Ct. 1694 (1998) (explaining that immunity is "jurisdictional" and "can be raised at any stage of the proceedings").

23.     Section 1981 was intended by Congress to "expressly equalize[] the right of all citizens 'to make and enforce contracts' ".[5] Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right[6] in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.[7]

 (emphasis added). The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits,

---

[4] *Flast v. Cohen*, 392 U.S. 83, 94—101, 88 S.Ct. 1942, 1949—1953; *Jenkins v. McKeithen*, 395 U.S. 411, 421—425, 89 S.Ct. 1843, 1848—1851 (1969) (opinion of Marshall, J.). Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction.' *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct. *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' *Golden v. Zwickler*, 394 U.S. 103, 109—110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *United Public Workers v. Mitchell*, 330 U.S. 75, 89—91, 67 S.Ct. 556, 564—565, 91 L.Ed. 754 (1947); *O'Shea v. Littleton*, 414 U.S. 488, 493–95, 94 S. Ct. 669, 675–76 (1974)
[5] *Faraca v. Clements,* 506 F.2d 956, 958 (5th Cir. 1975).
[6] *See also McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 273, 96 S. Ct. 2574, 2575, (1976). ("…42 U.S.C. s 1981, which provides that "(a)ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . .")
[7] *Id.*

privileges, terms, and conditions of the contractual relationship." § 1981(b). *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475, 126 S. Ct. 1246, 1249, (2006). The rights afforded by Section 1981 are only equal to and <u>no greater</u> than any other right afforded to any other person. In this regard, the Texas Civil Practices and Remedies Code provides all persons in Texas, when in a contract dispute for rendered services and performed labor, a means to recover attorney's fees and costs. *See* Tex. Civ. Prac. Rem. Code §38.001(a)(b). The law provides a procedure which must be followed to be eligible for the recovery of attorney's fees. The law requires the claimant to be represented by an attorney; the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. Tex. Civ. Prac. Rem. Code §38.002. Section 38.005 requires the chapter to be liberally construed to promote its underlying purposes. Tex. Civ. Prac. Rem. Code §38.005.

24.  In this case, one of the two alleged discriminatory acts by the City of Hutto is the "publishing" of two letters by the City Attorney and the City Manager, which were <u>written only to Plaintiff's attorney</u> (a duly authorized agent of the opposing party). In the attorney's letter, the City presents its claim to the opposing party (that the contract between the two parties is defective and that Mr. Jones materially breached the agreement by <u>without limitation, disparaging the City of Hutto</u>).[8] The letter proceeds to present the "just amount owed" based on the City's position that the contract was defective resulting in it being void and that Mr. Jones' breached.

---

[8] Defendant's Exhibits 29, 30, 31 and 32.

25.     The mere presentation of this letter[9], which all persons in Texas are statutorily entitled to send, and which all those who contract with one another in Texas are subject to, cannot constitute, as a matter of law, a violation of Section 1981 without more. There is no link shown in the Record to connect the letter being sent to any improper racial influence. Section 4 of Resolution R-2020-139 specifically directs the City Manager to promptly rescind the Separation Agreement. Section 5 of Resolution R-2020-139 specifically directs the City Attorney to "promptly notify Odis Jones" of the City Council's position and "to make demand for the return of funds provided". The Record does not contain a legally sufficient evidentiary basis to challenge the documented reasons for the issuance of the letters in a manner to support a jury verdict upon the but-for causation standard. There is no evidence that City Council would not have approved Sections 4 and 5 of the Resolution, which directed the City Manager to issue the letter rescinding the Separation Agreement and directed the City Attorney to promptly notify Mr. Jones if Mr. Jones was of another race. Because the issuance of these letters was "directed" by the City Council, the letters cannot constitute a separate act by the Defendant because the City Manager and City Attorney held no discretion regarding issuing the letters.

26.     Assume for a moment that the Resolution and the Letters do not constitute a breach of contract. If there was no breach of contract, the case is subject to Rule 12b(6) dismissal for failure to state a claim. The Judgment is an advisory opinion.

27.     Plaintiff cannot use Section 1981 as a means to provide greater federal statutory protection to one race (his), than to all other protected classes. The statute provides in full:

> **All persons** within the jurisdiction of the United States **shall have the same right** in every State and Territory **to make and enforce contracts, to sue, be parties,**

---

[9] Defendant's Exhibit 7 is the Separation Agreement. It is important to note that it has no attorney's fee clause; therefore, the demand letter provided by Texas law is a necessary step to recover fees in the event legal process is necessary.

> **give evidence, and to the full and equal benefit of all laws** and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286, 96 S. Ct. 2574, 2581 (1976) (emphasis added). To interpret the act of a governmental body taking a position in a contract dispute by Resolution and, in doing so, direct statutory notice and demand in a contractual dispute as provided by Texas law as an illegitimate foundation to base breach of contract and racial discrimination claims in violation of Section 1981. Doesn't Defendant have the same right to make and enforce contracts? How can the Defendant have the "…same right…to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws..." if taking a position in a contract dispute and acting pursuant to a Texas law to provide notice and demand, without more, support a verdict finding such action as a violation, then the rights to enforce contracts are not equal as Section 1981 requires.

28. Every breach of contract claim begins with one or both parties taking a position that the other has violated the contract or the contract is otherwise invalid or unenforceable. The mere assertion of a breach of contract in a letter from one lawyer to another, when the recipient of the letter is a protected class, cannot form the basis of a federal rights violation by itself. Likewise, the Separation Agreement has no provision prohibiting the sending of demand letters. The Record does not contain a legally sufficient evidentiary basis to support a jury verdict made based on passage of Resolution 2020-139 and its directed correspondence to Plaintiff's attorney, because the act itself did not: 1) make a contract; 2) interfere with Plaintiff's ability to enforce the contract, 3) interfere in Plaintiff's ability to sue, be parties, give evidence, and to the full and equal benefit of all laws. The proceeding in this very case demonstrates Plaintiff held and exercised his equal right to enforce the Separation Agreement, to sue, to be a party, to give evidence and receive the

full and equal benefit of all laws in connection with Plaintiff's contract with Defendant. The Record does not contain a legally sufficient evidentiary basis to support a jury finding that the Defendant[10] breached the Separation Agreement because there is no evidence to support the jury's answer that it did. There is no evidence showing that any of the conduct of which the Plaintiff relies regarding the conduct of elected officials, is equally barred by the prohibition in *Monell,* against respondeat superior liability. There is no causal link between the alleged disparagement breach, and official action by the City Council, Jones, and the City are the only parties to the contract and the City has been proven to have done no official action, under color of law, against the contract.

29.     It is uncontested that Jones did not provide "full and complete information regarding current Hutto matters in which Jones was involved".[11] Jones testified that he provided some information, but when pressed, he did not contest leaving the Wolverine and Legacy contracts out, which turned into multi-million-dollar lawsuits[12] before December 3, 2020.

30.     Resolution R-2020-139[13] was considered by a then six-person (due to one vacancy) City Council on December 3, 2020.[14] City Councilmembers Robin Sutton, Dan Thornton, Peter Gordon, Patti Martinez, Tanner Rose and Mike Snyder were present and voted unanimously to pass the Resolution.[15] If fact, it was Councilmember Robin Sutton who moved to approve the Resolution and Councilmember Tanner Rose who seconded the motion. There is no evidence in the record from which a reasonable jury can conclude Plaintiff's race was even a random thought

---

[10] Plaintiff must identify evidence of an act by the City Council or at the City Council's direction for the act to be considered an act by the City.
[11] Defendant's Exhibit 7, Section 4. Separation Agreement.
[12] Defendant's Exhibits 60 – 66.
[13] Defendant's Exhibit 8 (Resolution R-2020-139)
[14] Defendant's Exhibit 17 (City Council Meeting Minutes for December 3, 2020)
[15] *Id.*

of any Councilmember at the time the City Council voted on the Resolution. There is no testimony that any of the City Council deliberation during the consideration of the Resolution had anything to do with Plaintiff's race.[16] There is no evidence that any Councilmember attempted to influence another Councilmember in how they voted on the item related to the Plaintiff's race. There is no causal connection between what the plaintiff presented as evidence in this case and the vote that took place on December 3, 2020, passing Resolution R-2020-139.

31.     There is no evidence in the Record that the votes of Councilmember Robin Sutton, Councilmember Dan Thornton, Councilmember Peter Gordon and Councilmember Martinez had anything to do with Plaintiff's race. There is no evidence that but-for Plaintiff's race, they would have voted differently. This is crucial because at four affirmative votes the Resolution is passed[17] regardless of the remaining two votes to be cast by Rose and Snyder. The Record Evidence is indisputably in fatal conflict with the Jury's verdict on the Section 1981 claim which cannot stand. On this Record, it is uncontested that Plaintiff failed to prove that but-for Plaintiff's Race, Resolution R-2020-139 would not have been passed by the City Council. No reasonable juror could conclude from the evidence otherwise. Plaintiff's evidence does not meet the but-for standard required to support the verdict. Plaintiff failed to prove his case as a matter of law. The Jury's verdict on the Section 1981 claim, brought using Section 1983 must be set aside as against

---

[16] The December 3, 2020, City Council Meeting Minutes do not show any record of racial related communications by and between the City Council. The testimony of Councilmember Thornton and Councilmember Gordon (Trial Tr. vol. 3, 149, 169, 172-173, 182) deny race having anything to do with the decisions made by the City Council. There is no evidence challenging this evidence and testimony in the Record.

[17] Defendant's Exhibit 1 (2017 Hutto City Charter, Section 3.10 ("…no action of the City Council, … shall be valid or binding unless adopted by the affirmative vote of four or more members of the City Council.")).

the great weight of the evidence. Plaintiff's Section 1981 claim must be dismissed with prejudice in Defendant's favor.

32. The record of evidence shows that Mr. Jones made false statements knowing that they were false about the City, brought claims which were premature and unripe in this suit, and made false statements knowing that they were false about the City of Hutto., Further, he concealed information from the City of Hutto and is the wrongdoer as between him and the City; therefore, the record evidence supports a finding that the affirmative defense of clean hands bars any relief sought by Mr. Jones sounding in contract law.

33. Plaintiff claims the December 4, 2020, letter demanding the return of the severance payment is itself an act of disparagement, when: 1) only he and his attorneys knew about the letter when sent; (2) the letter, when viewed objectively, did not make a disparaging statement against Plaintiff; (3) the letter is a governmental record subject to and defined as public information pursuant to Texas Government Code Chapter 551 (The Texas Public Information Act); (4) Plaintiff admits in his testimony that he directed his attorneys to send substantially similar letters asserting his position and belief that the City was breaching its contract with Plaintiff prior to this letter being issued.

34. It is an undisputed fact that, the letter complained of focuses on the believed to be flawed transactional documents and does nothing to connect any act by the Plaintiff as a cause, or the cause, for the transactional documents' asserted flaws.

35. Moreover, Plaintiff testified that prior to any alleged breach, he directed his attorneys to send letters substantially similar to Defendant, which were sent asserting Defendant had breached the agreement and directing Defendant to stop allegedly disparaging Plaintiff.[18] If Defendant's

---

[18] Trial Tr. vol 2, 112-213

letter viewed objectively does not allege fault, blame or responsibility upon the Plaintiff it cannot legally constitute evidence of breach based on disparagement. It merely a stated position, and no actual deprivation of any ability or authority to enforce his contract resulted. is before the court in the record of this case. If the statement of a letter or resolution of position is enough to breach the contract, Plaintiff's letters sent to Defendant, sent prior to any sent by Defendant, letters which Plaintiff testified much harsher and disparaging to the City, alleging the City committed a contractual breach and commanded Defendant to alter its alleged conduct or further legal action would be taken, breached the contract first.

**Remittitur**

36. Alternatively, the Court should remit the damages award to a reasonable, non-excessive figure. This Court may remit the damages award if that award is "contrary to right reason." *Brunnemann v. Terra Intern., Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). Under Texas law, a trial court should grant remittitur if the evidence supporting the damages award is "factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986); *see Larson v. Cactus Util. Co.*, 730 S.W.2d 640 (Tex. 1987).

37. Here, the jury's award of $12.5 million is manifestly unjust for the reasons stated herein. In light of these facts and the other evidence adduced at trial, the damages award is excessive, and this Court should remit the damages award to a more reasonable sum. *See Adams v. Houston Lighting & Power Co.*, 314 S.W.2d 826, 830 (1958).

**Conclusion**

38. The Record reveals that if not dismissed by Motion for Judgment as a Matter of Law, the case should receive a new trial to resolve the unresolved legal matters and to serve justice. The

verdict must be vacated and set aside, and a new trial be had on the claims included in the verdict form.

## **PRAYER**

WHEREFORE PREMISES CONSIDERED, Defendant respectfully requests that upon consideration of Defendant's Motion for New Trial, that the Court grant such Motion and that a new trial including issues of liability and damages be granted Defendant and in the alternative remittitur be granted reducing the award and nominal damages on the Section 1981 claim and no damages on the contract claim based on immunity and for such further relief, in law or equity, to which Defendant has shown itself to be justly entitled.

Dated: April 18, 2023

Respectfully submitted,

**HYDE KELLEY LLP**
2806 Flintrock Trace, Suite A104
Austin, TX 78738
ghyde@txlocalgovlaw.com
jneedle@txlocalgovlaw.com
512.686.0700 Office
866.929.1641 Fax

By: /s/ *George E. Hyde*
GEORGE E. HYDE
State Bar No. 45006157
JONATHAN W. NEEDLE
State Bar No. 14855400

**ATTORNEYS FOR DEFENDANT CITY OF HUTTO, TEXAS**

## CERTIFICATE OF SERVICE

The foregoing document is served on all parties by filing it with the Court's electronic-filing system in accordance with the Federal Rules of Civil Procedure.

/s/ George E Hyde

George E. Hyde