IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ODIS JONES,<br>  *Plaintiff*, | § § § | |
| v. | § § | Case No. 1:20-CV-1210-ML |
| CITY OF HUTTO,<br>  *Defendant*. | § § § § | |

**DEFENDANT HUTTO'S REPLY TO JONES' COMBINED RESPONSE
TO HUTTO'S BRIEFING ON POST-JUDGMENT MOTIONS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

  Defendant City of Hutto, Texas ("Hutto"), files this Reply to Jones' Combined Response to Hutto's Post-Judgment Motions, respectfully submitting to the Court the following:

## I. Introduction

1. If the Court is going to obey stare decisis, it must grant Hutto's Motion for Judgment as a Matter of Law. *Jones failed in his burden to show that <u>any</u> City Councilmembers discriminated against him*, (much less four) *as a matter of law, by any theory argued.* This Court has no subject matter jurisdiction, there is no breach of contract and Hutto is immune from suit and liability for breach of contract. Jones lacks standing. If any judgment stands for Jones, the Court should remit the entire judgment to only nominal damages and award prevailing party attorney's fees to Hutto.

  **A. No Evidence Jones was Intentionally Discriminated Against**

2. Jones did not prove essential elements of the §1983 claim.[1] There is no legally sufficient evidence to prove but for race, [he] the City Council would not have adopted the Resolution, and

---

[1] Dkt. # 156, Page 3.

he did not prove the loss of a legally protected right in an at-will contract.[2] There is no legally sufficient evidence which could lead to any reasonable inference that four Councilmembers possessed and acted upon an illegitimate, discriminatory basis of Jones' Race to terminate the Separation Agreement ("Agreement"). There is no <u>substantial</u> evidence[3] to raise a <u>reasonable inference</u> of pretext.[4] Hutto acts *only* through a vote of four Councilmembers.[5] Jones did not prove four individual members intentionally discriminated against him.[6] Judgment must be for Hutto.

**B.  Evidence Does Not Meet Burden Needed to Show Hutto Discriminated**

3. Jones did not prove intentional discrimination by at least four City Councilmembers. He failed to prove any Councilmembers discriminated against him. All six City Councilmembers voted to declare Jones' Agreement to terminate the Agreement:[7] Robin Sutton, Dan Thornton, Mike Snyder, Peter Gordon, Tanner Rose and Patti Martinez.[8] Jones failed to produce evidence of pretext behind the vote to terminate the Agreement was pretext. Evidence that the proffered reasons for terminating the Agreement were "unpersuasive or even obviously contrived fails."[9] Jones must have evidence proving his proffered reason – racial animus – was correct, which he failed to do. No evidence exists to support a finding that Mr. Thornton, Snyder, and Gordon[10] used Race as a determinative factor. They relied on the City Attorney's advice. Mr. Bingham's

---

[2] *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).
[3] When "no evidence" is used within this Reply, it refers to the sufficiency standard by law.
[4] *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).
[5] "[N]o action of the City Council, except as provided in § 3.06, shall be valid or binding unless adopted by the affirmative vote of four (4) or more Members of the City Council." DX1 ¶ 3.10.
[6] *See Griggs v. Chickasaw County, Mississippi*, 930 F.3d 696, 704 (5th Cir. 2019).
[7] Hutto refers to the City Council's action as "terminating" the Agreement.
[8] DX 74.
[9] *Reeves*, 530 U.S. at 146.
[10] Mr. Snyder, Mr. Gordon and Mr. Thornton are three votes. Jones needed to prove the proffered reasons for ***four*** votes were pretextual. DX1 ¶ 3.10.

disagreement with the City Attorney, does not make it false and is insufficient to show pretext,[11] as the jury was informed.[12] Three councilmembers incontestably testified they relied on the advice of counsel to rescind the Agreement *that alone ends the inquiry*. Jones loses.[13]

4.  Evidence that the City Council voted to remove a plaque from City Hall is no evidence. It does nothing to infer racial animus in the many-months-later decision on the Resolution.[14] The record Jones created, citing only presence, nothing more, is no evidence of the determinative motive of Mr. Rose, Mr. Snyder or anyone else. The record Jones created is *silent* regarding motive of the City Councilmembers.[15] Removal of a plaque testimony is legally no evidence because it doesn't meet applicable evidentiary standards. Jones' evidence fails when tested against the law.[16]

**Stacking Inference upon Inference is <u>No Evidence</u> and "<u>Pure Conjecture</u>"!**

5.  "[M]ultiple inferences may be drawn from one set of facts, as may separate inferences as there are facts to support them, although ***<u>an inferred fact may not be used as a basis for a further inference, thereby extending a chain of inferences into the realm of pure conjecture</u>***."[17] Jones' "proof" by arguing inferences, stacked upon more inferences, equals <u>no evidence</u>. Ms. Sutton's, Ms. Martinez's, Mr. Gordon's and Mr. Thornton's mere presence at meetings is no evidence of influence. Arguing an impermissible chain of inferences, stacked one atop another, and atop another is no evidence. Jones wants this Court to find "evidence" when doing so is contrary to stare decisis. Councilmembers' stray remarks (which are no evidence), cannot form the foundation

---

[11] 2 RR147.
[12] "However, you cannot find intentional discrimination simply because you disagree with the political or business judgment of the City or believe it is harsh or unreasonable." Charge of the Court, Dkt. #112, p. 8.
[13] *See Reeves*, 530 U.S. at 146.
[14] 1RR146.
[15] *Id*.
[16] *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).
[17] *Hunter v. Shell Oil Co.*, 198 F.2d 485, 490 (5th Cir. 1952).

upon which Jones stacks inference after inference to meet an unreachable evidentiary standard on this record.[18]

### C. No Evidence Ms. Sutton's or Ms. Martinez' Voting Motivation Was Pretextual

6.     There is no evidence that Ms. Sutton's or Ms. Martinez' proffered reason was a pretext. According to trial exhibits, she merely spoke at City Council meetings before she was even elected. Jones wrongly stacks inferences[19] upon inferences regarding Ms. Sutton's motivation to terminate the Agreement, all fictionally supported from a single inference from a silent record. Jones fictional chain of inferences cannot support a verdict as a matter of stare decisis. Jones misrepresents that Ms. Sutton had "full knowledge that the Eide Bailly forensic audit report uncovered no wrongdoing"[20] even though the Forensic Audit Report is dated December 15, 2020, almost 2

---

[18] Stacking decisions made by one group of councilmembers regarding the resolution terminating the Agreement in December 2020, on top of an inference that the removal of the plaque in early 2020 by a different group of councilmembers was racist, on top of stray remarks by one or two of six councilmembers, which are also legally defined stray remarks (no evidence), to prove pretext and but-for discrimination is not permissible. Jones wants this court to stack upon the prior inference a second set of inferences, that each of those councilmembers engaged in some sort of campaign to influence other councilmembers to terminate the Agreement because of Jones' race. Then stack a third set of inferences that such attempts to influence other councilmembers was successful. Then stack a fourth set of inferences that it was successful with enough councilmembers to terminate the contract because of Jones' race. Stare decisis calls this "pure conjecture" and this Court must rule consistent therewith. These are inferences argued ignorant to uncontested evidence to the contrary regarding the Ms. Sutton's and Ms. Martinez's motivations being outside the record, and with Mr. Thornton's and Mr. Gordon's motivations being the City Attorney's opinion, not race.  Careful examination of the record reveals Jones has no *legally sufficient evidence* of racial motivation by either Mr. Snyder or Mr. Rose or anyone. Even Jones' star witness, Mr. Frankland testified that race was not involved in the decision to terminate Jones' contract.[18] The record conclusively shows an abundance of non-discriminatory non-race-based reasons for Hutto to terminate the **Agreement**, uncontroverted by Jones.[18] Jones has not produced evidence of a pretext. The § 1981 verdict must be vacated.
[19] *See Hunter*, 198 F.2d at 490.
[20] Reply, Dkt. # 160 at 7.

weeks after the December 3, 2020 vote to terminate the Agreement.[21] Jones did not produce legally sufficient evidence regarding Ms. Sutton's motivations.

7.  Ms. Martinez voted for the Agreement,[22] then voted to terminate it.[23] The "same actor inference" applies, creating **"*<u>a presumption that animus was not present</u>*"** where the same actor responsible for the adverse employment action either hired or promoted the employee at issue.'"[24] Jones has not rebutted this presumption as to any Councilmember. There is no evidence in the record as to Ms. Martinez' motivations. Jones offers again a fictional impermissible chain of inferences from a *silent* record. The transcript does not reveal anything supporting Jones' argument. Reliance on the Forensic Accounting Report,[25] for any witness by Jones is also misplaced because the report was dated 12 days after terminating the Agreement.[26] Jones does not meet the legal burden and does not succeed in his § 1983 claim.

### D. No Evidence of Racial Animus in Peter Gordon's and Dan Thornton's Vote

8.  Mr. Gordon voted both to enter into the Agreement and to terminate it.[27] The same actor inference applies[28] and Jones did not present evidence rebutting the presumption that animus was not present. Mr. Gordon uncontestably testified that he relied on only counsel's advice in terminating the Agreement. He also testified that the Eide Bailly report was not part of the discussion in connection with his decision to terminate the Agreement.[29] Dan Thornton also

---

[21] PX28; PX56.
[22] PX19.
[23] PX56.
[24] *Gilbert v. Big Bros. Big Sisters of Am., Inc.*, 262 F. Supp. 3d 402, 409 (N.D. Tex. 2017) (quoting *Spears v. Patterson UTI Drilling Co.*, 337 Fed.Appx. 416, 421–22 (5th Cir. 2009)).
[25] Response, Dkt. 160 at 11.
[26] PX28.
[27] PX19; PX56.
[28] *Gilbert*, 262 F. Supp. 3d at 409.
[29] 3RR162-63.

testified that he relied on advice of counsel in terminating the Agreement.[30] There is no evidence. At this point only two councilmembers remain, which means Jones loses, as a matter of law.

### E. No Evidence of Racial Animus in Tanner Rose's Vote

9. Jones fails to meet his burden to produce evidence that Tanner Rose's proffered reason to terminate the Agreement was a pretext. Mr. Rose did not testify. No witness testified as to his reason for terminating the Agreement. To find Mr. Rose's proffered reason was a pretext, this Court must infer what Mr. Rose's reason was and infer that it was a pretext – pure conjecture is no evidence. Byron Frankland testified that Mr. Rose stated that Jones was a "crook" in January 2020.[31] This ambiguous comment[32] is no evidence of racial animus,[33] it was made a full eleven months before the Agreement was terminated as such, they are no evidence.[34] Mr. Rose's alleged remark, made almost a year before the vote to terminate the Agreement, is equally no evidence.[35]

### F. No Evidence of Racial Animus in Mike Snyder's Vote

10. Jones has failed to meet his burden to produce evidence of pretext in Mr. Snyder's vote to terminate the Agreement. Mr. Snyder testified that he decided to vote to terminate the Agreement based upon advice of counsel.[36] While Jones argues that counsel's advice was wrong, he does not argue that Mr. Snyder did not receive advice or that it was unreasonable for Mr. Snyder to rely on the advice of counsel. Like Mr. Rose, Mr. Snyder is alleged to have called Jones a "crook" in

---

[30] 3RR181-82
[31] 1RR137-39.
[32] *See Coleman v. Exxon Chem. Corp.*, 162 F. Supp. 2d 593, 622 (S.D. Tex. 2001) (remarks critical of affirmative action were too ambiguous to support a reasonable inference of racial bias).
[33] A finder of fact must infer that "crook" implies racial animus and infer that racial animus was why the Agreement was terminated.
[34] *See Brown*, 82 F.3d at 655 (5th Cir. 1996).
[35] *See Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001) (remarks made "nearly a year" before adverse decision and unrelated to decision insufficient).
[36] 2RR205.

January 2020.[37] This remark is no evidence, for the same reasons stated above. Jones failed to meet his evidentiary burden. Jones' § 1981 claim fails and the jury verdict should be vacated.

## II. Cat's Paw Is Inapplicable and Unsupported

11.  There is no controlling authority, following *Comcast*, that applies the cat's paw doctrine to a § 1981 claim. Instead, Jones asks this Court to fabricate the authority needed to shoehorn his facts into an inapplicable theory of causation out of thin air.[38] In *Comcast*, the Supreme Court held that a § 1981 plaintiff "<u>bears the burden of showing that race was a but-for cause of its injury</u>. And while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses . . . <u>the burden itself remains constant</u>."[39] Jones attempts to circumvent this requirement by asking this Court to invent new precedent allowing the cat's paw doctrine to modify the but-for causation standard clearly defined in *Comcast*. Jones improperly relies on unpublished cases applying the cat's paw doctrine in Title VII and the Age Discrimination in Employment claims.[40] The Supreme Court held that § 1981 and Title VII were "two statutes with two distinct histories, and not a shred of evidence that Congress meant them to incorporate the same causation standard."[41] While the cat's paw doctrine may be applicability elsewhere, § 1981 claims is not such a claim.

12.  Even if the cat's paw doctrine applied,[42] There is no evidence of racial animus influence on official decisionmakers. Jones' fiction that Mr. Snyder and Mr. Rose held racial animus,

---

[37] 1RR137.
[38] *See Comcast Corp.*, 140 S. Ct. 1009.
[39] *Id.* at 1014–15
[40] Pl.'s Resp. at 13 (citing *Melvin v. Barr Roofing Co.*, 806 F. App'x 301 (5th Cir. 2020) and *E.E.O.C. v. DynMcdermott Petroleum Operations Co.*, 537 F. App'x 437 (5th Cir. 2013)).
[41] *Comcast*, 140 S. Ct. at 1017.
[42] "Under the 'cat's paw' analysis involving the imputation of an individual's racial animus to a decisionmaker, '[i]f the [plaintiff] can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker.'" *Lott v. Kenedy Indep. Sch. Dist.,* No. CIVASA-08-CV-935-XR, 2010 WL 1544503, at *3 (W.D. Tex. Apr. 16, 2010).

influencing Messrs. Jordan, Tom Hines, and Rose is misplaced[43] as none of them voted on the Resolution.[44] No evidence exists that any councilmember held racial animus, or influenced anyone to vote in any way. Jones' fatal failure was no evidence of a legally protected right to the Agreement and no evidence his race had anything to do with the termination of his contract.[45]

### Jones Misstates the Majority-Motivation Rule

13. The controlling rule of this Circuit is the majority motivation approach[46], which states that "where the evidence relates to individual members of a board. . . .[Plaintiff] [is] require[d] proof that a majority of the [Board] [had the impermissible animus]."[47] Yet, Jones applies other circuits' significant bloc test, which "eschews a bright-line rule" for an analysis of a "plaintiff mustering evidence of both (a) bad motive on the part of at least a *significant bloc* of legislators, and (b) circumstances suggesting the probably complicity of others."[48] Jones argues that because allegedly a significant bloc of the City Council is motivated by racial animus that animus can be imputed upon the rest of the City Council.[49] This is in direct conflict with the majority motivation approach that the 5th Circuit has adopted and applied in *Griggs*[50] and *Harville*.[51]

   **A. Breach of Contract and Section 1981 Claims Based on at-will Agreement Fails to Invoke the Court's Subject Matter Jurisdiction; Texas Immunity to Contract Claims and Damages Defeat Claims.**

14. Hutto is a governmental entity. The non-disparagement clause in the Agreement has a term of indefinite duration. The Texas Supreme Court holds that a contract with a term of indefinite

---

[43] Pl.'s Resp at 14.
[44] PX56 *i.e.* Ms. Sutton, Mr. Thornton, Mr. Snyder, Mr. Gordon, Ms. Martinez, and Mr. Rose.
[45] *Comcast*, 140 S. Ct. at 1019.
[46] Pl.'s Resp. at 15. Jones confusingly refers to this as the "headcount."
[47] *See Griggs*, 930 F.3d at 704.
[48] *Scott-Harris v. City of Fall River.*, 134 F.3d 427 (1st Cir. 1997) (emphasis added).
[49] *See* Pl.'s Resp. at 15.
[50] *See Griggs*, 930 F.3d at 704.
[51] *See Harville v. City of Houston, Mississippi.*, 945 F.3d 870, 878 (5th Cir. 2019).

duration is terminable at will.[52] Hutto's governmental immunity is also waived for a breach of contract claim when the contract is in writing and states its essential terms.[53] The duration of an agreement is an essential term.[54] Jones holds no protected contractual right from the termination of a contract terminable at-will. The termination of an at-will contract does not state a viable § 1981 claim, nor does it state a viable breach of contract claim. Hutto seeks judgment as a matter of law on all claims because Jones failed to establish the subject matter jurisdiction of this court.

15.   In *Clear Lake,* the Texas Supreme Court held narrowly, that contracts with governmental entities related to governmental functions without an indefinite term are indisputably terminable at will.[55] Hiring and firing of Hutto employees like Jones is a governmental function.[56] The Texas Supreme Court's opinion is binding here.[57] Jones does not invoke the courts subject matter jurisdiction and does not address Hutto's Texas Local Government Code § 271.151(2)(A) immunity because they know it is valid. Nor does he contest Hutto's immunity from consequential or exemplary damages as a matter of statute, entitling Hutto to dismissal of the contract claim for all the reasons stated above. Hutto must prevail. Hutto's argument regarding standing relates to his breach of at-will Agreement claim and the third element of his § 1981 claim - the discrimination concerned "the right to make and enforce contracts."[58] Termination of an at-will contract does not support a finding of standing or breach. Among other arguments, it is *uncontested* that Jones lacks standing because there is no evidence of disparagement by Hutto. For the purposes of Jones' § 1981 claim, Jones cannot rely on respondeat superior to impute any individual City

---

[52] *See Clear Lake City Water Auth. v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 390 (Tex. 1977).
[53] Tex. Loc. Gov't Code § 271.151(2)(A).
[54] *See Oakrock Exp. Co. v. Killam*, 87 S.W.3d 685, 691 (Tex. App.-San Antonio 2002, pet. denied).
[55] *Id*.
[56] *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995)
[57] *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940).
[58] *See Abdallah*, 79 F.4th at 428; 42 U.S.C. § 1981.

Councilmember's actions to Hutto as a whole.[59] With respect to his breach of contract claim, Jones argues without legal authority and in conflict with well settled Texas law that individual City Council members conduct is permitted to bind a City.[60] Jones is just wrong.

16.     Jones argues at length that the damages Jones was awarded for breach of contract were not in the categories of damages for which Hutto's governmental immunity was waived under § 271.153 of the Texas Local Government Code and Jones has only suffered nominal damages. Jones does not address this argument at all, instead arguing that § 271.153 is not a separate immunity. This is clearly false: "Immunity from liability protects the state from judgment even if the Legislature has expressly consented to the suit."[61] Hutto is immune from the damages awarded by the jury. And if a form of damages is not addressed by the statute, immunity remains for Hutto.

**Damages Are Unsupportable as a Matter of Law and Fact**

17.     The Fifth Circuit's maximum recovery rule compels a court to remit damages to only the maximum amount a jury could have awarded.[62] Jones' reliance on an unreported case, which holds no precedent, must be disregarded. If any verdict stands at all, this Court must reduce it to less than $260,000 by law. Jones is only entitled to nothing. Termination of an at-will contract is no breach and no damages and no evidence of attorneys' fees is in the record. Jones' complaint

---

[59] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).
[60] "The City can only act by and through its governing body. Statements of individual council members are not binding on the City." *Alamo Carriage Serv., Inc. v. City of San Antonio*, 768 S.W.2d 937, 941–42 (Tex. App.—San Antonio 1989, no writ).
[61] *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Hutto raised sovereign or governmental immunity as an affirmative defense. *See* 1st Am. Answer, Dkt. 37 at 18.
[62] *See Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 369 (5th Cir. 2002) In the Fifth Circuit only reported cases from the relevant jurisdiction involving comparable facts can determine the maximum recovery. Using reported cases to apply the rule, the court may not sustain under any circumstances in this record more than $260,000, as determined by Johnson v. Southwest Research Institute, 384 F. Supp. 3d 722 (W.D. Tex. 2019), (a reported case from this district) for a supported verdict in a § 1981 claim, which this is not.

contains seven counts against Hutto and two other defendants, including claims that do not allow for attorneys' fees.[63] To recover attorneys' fees, a party must "prevail."[64] Jones fails here.[65]

## PRAYER

WHEREFORE PREMISES CONSIDERED, Hutto respectfully requests that this Court grant Hutto's pending motions and provide the relief requested therein, and for such further relief, in law or equity, to which Defendant has shown itself to be justly entitled.

Dated: October 30, 2023

                                                  Respectfully submitted,

                                                  **HYDE KELLEY LLP**
                                                  2806 Flintrock Trace, Suite A104
                                                  Austin, TX 78738
                                                  ghyde@txlocalgovlaw.com
                                                  512.686.0700 Office
                                                  866.929.1641 Fax

                                                  By: */s/ George E. Hyde*
                                                  GEORGE E. HYDE
                                                  State Bar No. 45006157

                                                  **ATTORNEYS FOR DEFENDANT CITY OF HUTTO, TEXAS**

---

[63] *See* Original Complaint, Dkt. #1.
[64] *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 (Tex. 2009)
[65] *Id*.

## CERTIFICATE OF SERVICE

The foregoing document is served on all parties by filing it with the Court's electronic-filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ George E. Hyde*
GEORGE E. HYDE