IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ODIS JONES, | § | |
| Plaintiff, | § | |
| | § | No. 1:20-CV-1210-ML |
| v. | § | |
| | § | |
| CITY OF HUTTO, | § | |
| Defendant. | § | |

**ORDER**

Before the court is Plaintiff's Combined Amended Motion for Attorneys' Fees and Expenses and Response to Defendant's Motion for Judgment on the Pleadings (the "Motion") (Dkt. 189) and all responsive briefing. The court previously ruled on the Defendant's Motion for Judgment on the Pleadings (Dkts. 186, 200). This order is limited to a review of Plaintiff Odis Jones's request for attorneys' fees and costs. The court has reviewed the pleadings, the relevant case law, the entire case file, and determined that a hearing is not necessary.[1]

I.    BACKGROUND

After years of motions practice, a jury trial, a subsequent Fifth Circuit opinion and remand, Jones seeks the recovery of attorneys' fees and costs. On March 2, 2023, the jury reached a unanimous verdict and found that Defendant City of Hutto ("Hutto") was liable to Jones for racial discrimination under 42 U.S.C. § 1981 in an amount of $8,000,000 and for breach of contract in an amount of $4,500,000. Dkt. 124. The court entered a Final Judgment, Dkt. 127. Hutto filed several post-trial motions. Dkts. 133, 134, and 156. The court granted a remittitur in a lengthy opinion and otherwise denied the motions. Dkt. 163 at 56- 57. Jones accepted the remittitur, Dkt. 164. The Fifth Circuit reversed the judgment on the discrimination claim and upheld it on the breach of contract claim. *See Jones v. City of Hutto*, 154 F.4th 332, 344-45 (5th Cir. 2025). The

---

[1] Page number citations refer to the pagination in the CMECF header.

Fifth Circuit found that Jones "prevailed on his right to retain the separation payment made under the contract" and remanded the case to consider "the attorney's fee issue" as a result. *Id.* at 345.

Jones seeks to recover $1,035,422 in attorneys' fees; costs in the total amount of $45,668.08; and, post judgment interest on $1,081,090.08 in fees and costs from March 21, 2023 until paid.

Hutto maintains that Jones is not entitled to the recovery of fees and costs since he prevailed only on a breach of contract claim against a Texas municipality. Dkt. 191. In the alternative, Hutto contends that the fees sought are unreasonable in consideration of (a) Jones's limited recovery in terms of the totality of his original claims and defendants, (b) the number of hours worked on the prevailing claim, and (c) the hourly rate charged by Jones's individual attorneys.

## II.    APPLICABLE LAW

To secure an award of attorneys' fees from an opponent, the prevailing party must prove that: (1) recovery of attorneys' fees is legally authorized, and (2) the requested attorneys' fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process. FED. R. CIV. P. 37(e), 37(a)(5); LOC. R. CV-54(b)(2).

A determination of reasonable and necessary attorneys' fees is premised on the application of the lodestar method. Courts in the Fifth Circuit apply the lodestar method to calculate attorneys' fees. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999)). The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate. *Id.* (citing *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012)). The appropriate hourly rate is usually defined by the market rate in the community in which the district

court sits and should reflect the prevailing market rates, not the rates that "lions at the bar may command." *Black*, 732 F.3d at 502 (citing *Smith & Fuller*, 685 F.3d at 490). Litigants seeking attorneys' fees have the burden to show the reasonableness of the hours billed and that the attorneys exercised reasonable billing judgment. *Black*, 732 F.3d at 502 (citing *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006)); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). The lodestar amount is entitled to a strong presumption of reasonableness. *Black*, 732 F.3d at 502 (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)). There is a "strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a 'reasonable' fee." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). After calculating the lodestar amount, the district court may adjust the amount of attorneys' fees based on the twelve factors[2] set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Black*, 732 F.3d at 502. Many of these factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted. *See id.*; *Jason D.W. v. Houston Indep. School Dist.*, 158 F.3d 205, 209 (5th Cir. 1998). The burden is on the party moving for attorneys' fees to establish that their requested fees are reasonable. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam).

### III.   PREVAILING PARTY

Jones prevailed on a single claim against Hutto that yielded no recovery of monetary damages. Instead, Jones prevailed on his right to retain the separation payment in the face of

---

[2] These factors are: (1) the time and labor required; (2) the novelty and difficulty of issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to accepting the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Black*, 732 F.3d at 502 n.7 (citing *Johnson*, 488 F.2d at 717-19).

repeated and ongoing demands by Hutto that Jones return the severance payment. As the Fifth

Circuit noted:

> Though Jones retained the $412,000 payment throughout the proceedings, the City disputed his right to retain that payment. Jones prevailed, and as a consequence, was not required to repay the $412,000. His claim for attorney fees remains.
> The City maintains that Jones is not entitled to recover attorney fees because he is not entitled to any damages in light of the fact he never repaid the $412,000. The Supreme Court of Texas has directed that "suits cannot be maintained solely for the attorney's fees; a client must gain something before attorney's fees can be awarded."[] But Jones did "gain something." He pursued and prevailed on his right to retain the separation payment made under the contract.

Dkt. 184-1 at 21 (citation modified).

### IV.    JONES IS ENTITLED TO THE RECOVERY OF ATTORNEYS' FEES AND COSTS

Jones argues he is entitled to the recovery of fees pursuant to section 271.153 of the Texas

Government Code or the equitable exception to the American Rule prohibiting fee shifting absent

agreement or other statutory authority that allows federal courts sitting in diversity to award

attorneys' fees through their inherent powers if the losing party has asserted or maintained a claim

or defense in bad faith, vexatiously, wantonly, or for oppressive reasons. Dkt. 189 at 3-4.[3]

The court declines to exercise its inherent powers to employ the equitable exception

described above. Jones contends that Hutto's litigation conduct and tactics were vexatious,

unreasonable and oppressive. Taken together, Jones argues that Hutto repeatedly acted in bad faith

during the pendency of the litigation. *Id.* at 28-31.  While Hutto's litigation conduct was certainly

frustrating at times, *see e.g.* Dkt. 189 at 30-31, the fact remains that when the dust finally settled,

Hutto prevailed against the vast majority of Jones's claims, which were found to be both factually

---

[3] Plaintiff's attorneys' fee request is therefore not based upon the separation agreement (Dkt. 186 at 4); 42 U.S.C. § 1988 (*id.* at 5-6); the declaratory judgment claim (*id.* at 6-7); or under § 38.001 of the Texas Civil Practice and Remedies Code (*id.* at 8-9).

and legally deficient. At this point, this court is not going to fault Hutto for mounting an aggressive defense to claims that were ultimately found to be legally deficient.

As Jones notes, "Section 271.153(a)(3) authorizes an award of 'reasonable and necessary attorney's fees that are equitable and just' in 'an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter….' TEX. LOCAL GOV'T CODE § 271.153(a)(3)." Dkt. 189 at 22.  Jones argues the statute does not restrict the award of fees to cases where they are independently provided for under a separate statute or by the parties' contract or otherwise create an additional prerequisite other than that the suit concerns a breach of contract against a local governmental entity. *Id.*

Whether Section 271.153(a)(3) is an adequate basis for an award of attorneys' fees in this case is a matter of dispute. The issue is whether this provision serves as an independent basis for the award of attorneys' fees against a governmental entity or whether the provision merely waives governmental immunity but requires a separate independent basis for an attorneys' fee award. The parties' diametrically opposed positions on this issue are rooted in the statutory text, legislative amendments to the original statutory text, and case law.

The parties' respective arguments on whether Section 271.153(a)(3) can serve as a vehicle for the recovery attorneys' fees by Jones are set out in their respective briefing. Dkt. 189 at 20-28 (Jones); Dkt. 186 at 10-14 (Hutto). Without repeating the parties' arguments, the court finds Jones's interpretation of the statute and its applicability to be more persuasive. That is, the statutory text, amendments to the statute, and case law interpretation set forth in Jones's briefing are more persuasive on this point. Accordingly, the court will award fees under Section 271.153(a)(3).

### V.    THE LODESTAR

The lodestar amount is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate.

#### A.    Hourly Rates

Jones is seeking reimbursement for legal work performed by nine different lawyers and five paralegals. Dkt. 189 at 15-16. Each is supported by at least one written declaration. The hourly rate charged by each lawyer differs, ranging from $400/hour to $800/hour. Jones's different lawyers worked on different aspects of the case including pretrial motions, hearing appearances, trial, and the subsequent appeal. In a single page, Hutto contends that the hourly rates are excessive. Dkt. 191 at 19. Hutto's primary argument is that the hourly rates charged by Jones's legal team are higher than those charged by Hutto's attorney and that Jones could have pursued his claim with the assistance of only two lawyers and a single paralegal.

The court finds that the hourly rates are reasonable based on the declarations submitted in support and the court's significant familiarity with the manner in which this case was litigated and tried. The issue is not whether Jones could have found lawyers to work for less. The issue is whether Jones's counsel's hourly rates are reasonable in light of all of the circumstances and supported by the record. They are. While Jones was represented by a large total number of attorneys, this court knows that all nine lawyers did not work on the case together. Instead, each lawyer was involved with separate and distinct legal matters during litigation that has now spanned five and one-half years.

#### B.    Hours Worked

Jones summarized the lodestar fee by separating the hours worked by firm rather than by individual lawyer and paralegal as follows:

| Law Firm | Hours | Reasonable Rates | Lodestar Fee |
|---|---|---|---|
| Cornell Smith Mierl Brutucao Burton LLP | 1,226.80 | $525-$650 (attorneys) $150 (paralegals) | $460,197.00 |
| Ellwanger Henderson LLLP | 845.25 | $400-$575 (attorneys) $200 (paralegals) | $401,460.00 |
| Alexander Dubose & Jefferson LLP | 407.80 | $700-$900 (attorneys) $250 (paralegals) | $165,315.00 |
| Holt Major Lackey PLLC | 30.25 | $500 | $8,450.00 |
| **Total Hours** | 2,510.10 | **Total Lodestar Fee** | $1,035,422.00 |

Dkt. 189 at 17-18.

Jones seeks a total lodestar fee recovery of $1,035,422.00. Jones suggests that "his attorneys have significantly discounted their lodestar calculations based on the fact that he prevailed only on the contract claim after the Fifth Circuit appeal." Dkt. 189 at 18. The declarations submitted in support reflect that the attorneys have reduced their fee request by anywhere from 20% to 60% so as to reflect recovery solely on the contract claim. Jones further suggests that "[t]he discounts applied are appropriate given that the breach of contract serves as the alpha and omega of this case." Dkt. 189 at 18.

Hutto contends that the primary focus of the litigation was not the contract claim but instead Jones's discrimination and disparagement claims coupled with his large damages request. Dkt. 191. Hutto further objects to several of the declarations that were submitted in support of the fee request. Hutto's objections are that the declarations are crafted in a summary fashion and fail to limit the "hours worked" to the single claim upon which Jones prevailed. Hutto also objects to any recovery associated with (a) the Emergency Motion for Protective Order, (b) Motion to Withdraw Admissions, (c) Motions to Dismiss, (d) crafting the Amended Complaint, (e) time spent on discovery matters more directly related to Jones's discrimination claims, (f) most of the time associated with preparation for, and trial of, the case, (g) most of the fees associated with post-

judgment motions, (h) time spent on summary judgment, initial disclosures and scheduling orders, and (i) other matters. Dkt. 191 at 9-18.

### C.    Analysis

The court finds that the contract claim upon which Jones prevailed was most certainly not the "alpha and omega of this case." Dkt. 189 at 18. Instead, the court agrees with Hutto's assessment that the focus of the case was Jones's discrimination and disparagement claims. Having successfully defended itself against the vast majority of Jones's claims, Hutto repeatedly suggests the entire case from its inception should have been limited to a determination of whether the Separation Agreement was valid and whether the agreement was breached by Hutto. The jury clearly found that Hutto breached the agreement and in doing so also found that Hutto's breach was motivated by discriminatory intent.

Hutto argues the jury's determination that the Separation Agreement was breached was a foregone conclusion given its benevolent admissions. As Jones notes, and the Fifth Circuit found, this case was not only about the breach but Hutto's repeated demands that the $412,000 severance payment to Jones be returned. Hutto never abandoned that demand. The following excerpts from Hutto's counsel's emails makes this abundantly clear:

> My client is of the opinion that no amount of money can resolve this matter other than your client's action to admit his wrongdoing **and refund the all moneys received** and for the city to recover all legal fees associated with disposing of the multiple legal conflicts he left behind. My client is confident that once your client's full and unabridged history of manipulation of local government is fully and completely in the sunshine that not only will his claims be found as a guise, but his wrongdoing will demonstrate his true evil intent to take from the public.
>
> Unless you are ready to enter into mediation with the understanding that **you will be making substantial offers to compensate the city** for the mess he made of the community, the City will not participate in any alternate dispute resolution . . . .

Dkt. 197-2 (email dated May 22, 2021) (emphasis added). And,

**Now if your client is seeking mediation to offer a settlement as to the funds he received illegally** and in violation of the Texas Open Meetings Act, etc. and to avoid an attorney fee recovery from the Declaratory Judgment claim, please advise; otherwise, I have no alternative but to continue to prepare for trial and the upcoming hearing on our cross-motions.

Dkt. 197-3 (email dated February 2, 2023) (emphasis added).

Jones had no choice but to continue to litigate his claims given Hutto's counsel's repeated accusations briefly summarized above that Jones had "true evil intent to take from the public," that Jones left behind "the mess he made of the community," and that Jones's receipt of the separation payment was illegal and must be returned. Such vitriol has a price.

The court finds that the lodestar advanced by Jones attempts to properly segregate the hours worked between the successful contract claim and the remaining unsuccessful claims. Moreover, the court finds the percentage discounts applied to the fee request to be appropriate. The discounts reflect the tremendous difficulty in separating what portion of the "hours worked" related to the contracts claim versus the other claims upon which Jones did not prevail. As one example, jury selection was required whether Jones prevailed on one claim or six. Hutto's objections to billings related to various matters essentially call into question whether the discounts applied by Jones are adequate. Otherwise stated, Hutto argues that a much larger discount should be applied to Jones's gross billing total. The court intends to address the discount and Hutto's objections during an analysis of the *Johnson* factors.

The court finds that the lodestar is $1,035,422.00.

VI.    **APPLICATION OF THE *JOHNSON* FACTORS**

The court has reviewed the *Johnson* factors and finds that most have already been accounted for, or addressed, in the establishment of the lodestar, with one exception: the amount involved and results obtained.

9

Jones asserted a large number of claims against Hutto and other individuals. In the end, only a single claim against a single defendant survived. That successful claim did not provide any monetary recovery by the Jones. However, successful pursuit of the breach of contract claim did forever insulate Jones from repeated and relentless accusations and demands by Hutto that he illicitly acquired the $412,000 severance payment and that he must return the payment to Hutto. His success was achieved after a jury determined that at least two of Hutto's council members exhibited racial animus towards Jones.

In its briefing, Hutto takes it upon itself to repeatedly recharacterize the breach of contract claim as "Validity Declaration Claim." It was not. Instead, it was a breach of contract claim and Jones's only defense to Hutto's continued accusations that he was evil and corrupt and must return the severance payment. Hutto <u>never</u> stated on the record that it no longer sought the return of the severance payment. Hutto seems to believe it could perpetually vilify Jones after he left Hutto's employment. All of which is to say that Jones achieved a merits, not a mere moral, victory on an important claim. *See Cloud v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 162 F.4th 527 (5th Cir. 2025). This court's analysis would be different if Hutto had affirmatively abandoned pursuit of the return of the severance payment. One small example of Hutto's position on the matter is captured in the emails crafted by Hutto's counsel and summarized above: that Jones was engaged in "wrongdoing," had "true evil intent" and had received the severance payment illegally. *See* Dkt. 197-2, 197-3. Hutto has only itself to blame for shifting what may have been a simple moral victory into a merits victory instead.

While Jones achieved a merits victory, it was a narrow one. This case centered on Jones's most damaging accusations against Hutto and others, the discrimination and disparagement claims. In other words, Hutto and various individuals actually "won" in terms of both the number of claims

initially lodged against them and arguably the most serious claims against them. The claims that Jones lost and Hutto won were the claims that would have served as the basis for a multi-million-dollar recovery in damages (as initially found by the jury).

Given the foregoing and consideration of the amount involved and the results obtained, the Court finds that a further 75% reduction to the lodestar is required. The court finds that Hutto must pay $258,855.50[4] in attorneys' fees.

## VII.   COSTS

Jones seeks an award of costs under Federal Rule of Civil Procedure 54(d)(1) totaling $45,668.08. Dkt. 189 at 19-20. It does not appear that Jones applied any discount to its requested cost recovery. While Hutto did not specifically object to, or address the individual costs listed, it did forcefully contest Jones's requested fees. With that in mind, the court has reviewed Jones's costs submission and finds that Jones's cost award should be reduced by 50%. This reduction encompasses the arguments above related to the surviving prevailing claim, the nature of the individually listed costs, and the fact that a trial was held, whether it resulted in a single meritorious claim or several.

The court finds that Jones is entitled to recover costs in the amount of $22,834.04.

## VIII.   POST-JUDGMENT INTEREST

Jones is entitled to the recovery of interest on the final attorneys' fee and cost award from the entry of final judgment, March 21, 2023, until paid in full. TEX. LOC. GOV'T CODE § 271.153(a)(4).

---

[4] $1,035,422.00 lodestar x .25= $258,855.50.

**IX.    CONCLUSION**

Jones's Combined Amended Motion for Attorneys' Fees and Expenses and Response to Defendant's Motion for Judgment on the Pleadings (Dkt. 189) is **GRANTED, in part, and DENIED, in part.**

Jones is entitled to recover attorney's fees from Hutto in the amount of **$258,855.50.**

Jones is further entitled to recover cost from Hutto in the amount of **$22,834.04.**

Jones is further entitled to post-judgment interest on the total attorneys' fee and cost award from March 21, 2023, until paid in full.


SIGNED June 16, 2026.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

12